## ANDREW WARSOP *vs.* CITY OF HASTINGS.

### March 22, 1876.

**Injunction—Requisites of Complaint.**—In all cases where equitable relief is sought through the extraordinary remedy of an injunction, the facts entitling the party to such relief must be clearly and positively alleged and shown. It is not enough that their existence may be inferred from the averments in the complaint. The complaint in this case *held* insufficient under this rule.

**Municipal Bonds—Ordinance of Council—Ratification by People.**—Sp. Laws 1869, ch. 34, authorized the city of Hastings, at any time prior to August 1, 1870, by a vote of a majority of its city council, ratified by the voters of the city, to create and issue its bonds in aid of the Saint Paul & Chicago Railway Company. It also enacted that, before said bonds should be issued, the question of their issue should be submitted and passed upon by the voters at any election held for that purpose at any time prior to said 1st day of August, and if such issue was by them approved, then that the bonds should be issued, and the council might make such agreements as they might

deem proper with the company for, or relating to, the disposal of the bonds or their proceeds. Pursuant to this law the council, on May 3, 1870, duly adopted an ordinance authorizing the issue of a certain amount of bonds, and fully prescribing the terms and conditions upon which they should be issued, among which was one that no bonds should be issued until after the completion of the railway, as specified in the ordinance. This ordinance was duly ratified by the people at an election held May 15, 1870, in pursuance of its provisions. *Held,* that the ordinance was a proper exercise of power on the part of the city council under the law in question.

**Same—Notice of Election—Sufficiency of Publication.**—The ordinance in question designated the 15th day of May as the day for holding such election, and directed the city clerk to give ten days' notice thereof by publication. The ordinance was first published May 5th, when it took effect. The notice of election was given simultaneously with the publication of the ordinance. *Held* sufficient.

The plaintiff, a resident and tax payer in the city of Hastings, brought this action in the district court for Dakota county to restrain the proposed issue of the bonds of the city to the Saint Paul & Chicago Railway Company. A demurrer to the complaint was sustained by *Crosby,* J., and the plaintiff appealed.

*Clagett & Searles,* for appellant.

*Bigelow, Flandrau & Clark,* for respondent.

CORNELL, J. Assuming the city ordinance to have been duly and legally passed and ratified, in conformity with the act of the legislature of May 15, 1869, (Sp. Laws 1869, ch. 34,) it cannot be doubted that an acceptance of its terms and conditions, and full compliance therewith, on the part of the company, in the construction of its road, constituted a valid and binding contract between it and the city.

It is well settled that, in all cases where equitable relief is sought through the extraordinary remedy of an injunction, the facts entitling the party to such relief must be clearly and positively alleged and shown. It is not enough that their existence may be inferred or spelt out from the averments in the complaint. If, in this case, the relief sought was intended to be based upon the fact that no contract existed between the company and the city, growing out of

the passage of the ordinance and its acceptance by the company, that fact should have been distinctly stated, or made clearly to appear, in the complaint.

Instead, however, the ordinance is alleged to have been passed by the council, and voted upon by the people, and approved by them, at an election held for that purpose. It is averred that "said railway company has fully constructed and completed its said road, and is operating the same, *as in said ordinance required*," and "that said common council of the city of Hastings has made no agreement with said railway company for, or relating to, the disposal of said bonds, or the proceeds thereof, in aid of said railway." These several averments must all stand together, if possible, and be construed accordingly. Hence the last cannot be held as negativing the existence of an agreement between the city and the company, such as is necessarily implied from the passage of the ordinance by the former and its acceptance by the latter. It does not negative the expressly averred fact "that the company has constructed and completed its road *as in said ordinance required;*" and the fair implication from this is that the terms and conditions of the ordinance have been fully complied with on the part of the company—a fact necessarily presupposing an acceptance on its part. This conclusion is strengthened by the fact that the complaint particularly specifies the grounds of objection to the issuance of the bonds to be an alleged irregularity in the publication of the ordinance, and an insufficient notice of the election at which it was ratified, and not the want of an agreement between the city and company.

From this view of the complaint it must be assumed that a valid and binding obligation rests upon the city to issue its bonds, as provided in the ordinance, unless the ordinance itself is invalid by reason of a want of requisite authority in the council to pass it, or of a failure on the part of the voters of the city legally to ratify it within the prescribed time.

The ordinance rests for its authority upon Sp. Laws 1869, ch. 34. The object of this act, as expressed in its title, was "to authorize the city of Hastings to aid in the construction of the Saint Paul & Chicago Railway." Section 1 enacts that "the city of Hastings may, at any time prior to August 1, 1870, by a vote of a majority of its common council, subject to the ratification of the legal voters of said city, as hereinafter provided, create and issue its bonds, with coupons attached thereto, to an amount not exceeding in the aggregate $50,000," at a rate of interest, and payable as therein specified, "and pledge the faith and credit of the city" for their payment, both principal and interest. It also declares that the bonds so authorized to be issued, or their proceeds, are to be used in aid of the construction of said railway.

Section 2 enacts that, "before said bonds are issued, the question of issuing them shall be submitted to the legal voters of said city at any general or special election," to be held and conducted as therein provided, upon a notice of at least ten days, published in some newspaper in said city. It also declares that "if a majority of the ballots cast at such election shall have upon them the words, 'for railway bonds,' then said bonds shall be issued, and the common council may make any and all such agreements as they may deem proper with said railway company for, or relating to, the disposal of said bonds, or the proceeds thereof, in aid of said railway," and concludes with the proviso "that the question of issuing such bonds may again, at any time or times prior to August 1, 1870, in like manner be submitted to said legal voters, and with like effect."

It is claimed by plaintiff that because the bonds authorized to be issued under this act, or their proceeds, are by its terms required to be used in aid of the construction of the road, therefore they must be issued before the completion of the work, and cannot be thereafter; also, that the power or authority conferred upon the city by the act was limited

in its exercise to a time prior to August 1, 1870, and unless fully executed before the expiration of that time it terminated and was gone; that "to create and issue bonds" includes their formal execution and actual delivery, and that as by the terms of the ordinance they were not to be issued and delivered to the company except upon the completion of its road in 1872, after the power to issue had ceased, the ordinance was inoperative and of no effect.

According to this argument the city had the right to issue and deliver its bonds to the company prior to August 1, 1870, to aid in the construction of a road thereafter to be built, in the manner and upon the terms prescribed in the ordinance, but had no power to protect itself against a contingent failure of the enterprise by withholding the actual issue and delivery of the bonds till full performance by the company. It is obvious that a construction thus narrow and technical ought not to prevail, unless required by the express terms of the enactment or its clearly expressed intention; and neither its context nor declared purpose, in our judgment, warrants any such conclusion.

The object of the act was to enable the city to aid the public enterprise indicated, by a use of its credit, and this could be as effectually accomplished by a pledge of its credit, contingent upon the completion of the road, as by the actual issue and delivery of its bonds in advance of construction. The act clearly contemplates that the road was to be built after the determination of the question as to the issue of the bonds by the decision of the council and ratification by the people, for it is expressly provided that, upon such ratification, "*then* said bonds shall be issued, and the council may then make any and all such agreements as they may deem proper with said railway company for, or relating to, the disposal of said bonds, or the proceeds thereof, in aid of said railway." The time limited for the settlement of this question as to the issue, by the act of the council and the vote of the people, was August 1, 1870.

These provisions necessarily imply that the language employed in the 1st section of the act must be so construed as not imperatively to require the formal execution and delivery of the bonds, therein authorized to be created and issued, prior to said 1st day of August. The thing evidently in the legislative mind, and which was required to be done before that time by the vote of the council and ratification of the people, was the assent on the part of the city, in the manner indicated, to the creation of the proposed debt or obligation which it was authorized to incur and contract. This was the vital matter, which affected both the company and the city, and concerning which it was important that the tax payers should be consulted. The formal execution and delivery or disposal of the bonds which constituted the evidences of such indebtedness were comparatively unimportant matters, that might very properly be left, as they were by the act, subject to the future agreement between the company and council.

But the council went further than this. In the ordinance which it adopted and submitted to the voters of the city it not only submitted the question as to the issue of the bonds, but the time when, and the terms and conditions upon which, they were to be issued. To this, however, no valid objection can be conceived. The real question which was required to be submitted to the voters, by the act, was fully and fairly presented by the ordinance, and their decision thereon, followed, as must be assumed, by an acceptance of its terms and conditions by the company, constituted a valid contract, entitling it to a delivery of the bonds upon a full performance on its part.

The only other point made by plaintiff is that the election was illegal because the requisite ten days' notice was not properly given. The election was held on the 15th day of May, the time designated in the ordinance. The notice was published on the 5th, simultaneously with the first publication of the ordinance, and as the ordinance, which alone

gave the clerk the authority to give the notice, only took effect upon its first publication, it is claimed that the notice was premature and without authority. As is said by the court in *Clark* v. *City of Janesville*, 10 Wis. 136, in passing upon this precise point, " the authority to publish the notice existed simultaneously with the publication, and authorized it; and it would be proceeding upon too refined and technical principles to hold such a publication unauthorized because the ordinance was not yet operative when the clerk carried the papers to the printer."

Order affirmed.