STATE OF MINNESOTA *ex rel.* MINNESOTA RAILWAY CONSTRUCTION COMPANY *vs.* CITY OF HASTINGS.

August 11, 1877.

**Bill—Presumption as to, When Enrolled and Properly Authenticated—How Presumption may be Overthrown.**—An enrolled bill, properly authenticated in compliance with section 21, article 4, of the constitution of this state, is to be presumed to have passed in accordance with the requirements of the constitution. This presumption is, however, not conclusive, but under the rule in *Supervisors, Etc.,* v. *Heenan,* 2 Minn. 281, (330,) may be overthrown by a reference to the legislative journals. But such presumption is not overthrown by the failure of the journals to show any fact which is not specially required by the constitution to be entered therein. Of this class are the facts with reference to the reading of a bill under the provisions of section 20, article 4 of the constitution, and therefore the failure of the journals to show their existence as respects a given bill does not overcome the presumption arising from its proper authentication.

**Effect of an Ordinance Proffering Aid to a Railroad**—*The State* v. *The Supervisors of the Town of Lime,* 23 Minn. 521, followed, in respect to the nature and effect of a city ordinance proffering aid to a railroad company.

**Bonds Proffered by City to Railroad—When Transferred by Terms of a General Assignment.**—A contract by which the St. Paul & Chicago Railway Company "agrees to sell, transfer and assign" to the Minnesota Construction Company "all gifts, donations, bounties, or aid, in any form or shape, which have been or may hereafter be made or given by any person, corporation, municipality or state, to aid in the construction of said railway," is sufficient to comprehend the right of the railway company to avail itself of a standing offer made to it by the city of Hastings of bonds to aid in the construction of the railway, which bonds were to be delivered upon performance of certain conditions, none of which had been performed at the time of the transfer and assignment.

**Demand—Waiver.**—Certain facts appearing in the case considered, and held to show a waiver of any objections to the sufficiency of a demand made by one Rice, in behalf of the relator, for the bonds in question, either as respected Rice's authority to make the demand for the relator, or the authority or notice of the authority of the relator to have the demand made, and to receive the bonds by virtue of the transfer before mentioned.

**Contract—Terms Construed.**—The city ordinance under which the relator claims the bonds of the respondent contains the following provisions, viz.: "*Provided*, however, that said bonds shall not be issued or delivered to said company until said railway shall be constructed and fully completed from St. Paul by the way of the city of Hastings, Red Wing and Lake City, and from thence to some point of connection with a railroad leading to Milwaukee and Chicago, with the cars running thereon. * * *Provided, further*, that said railway shall be so completed and in operation from St. Paul to said point of junction with some other railroad leading to Milwaukee and Chicago aforesaid, on or before the first day of March, 1872." *Held*, that the words "a railroad leading to Milwaukee and Chicago," embrace not only a railroad whose line reaches Milwaukee and Chicago, but a railroad connecting either directly or by the way of another railroad or other railroads, with a railroad whose line reaches Milwaukee and Chicago.

*Mandamus* to compel the city of Hastings to issue certain bonds, and deliver them to the Minnesota Railway Construction Company. The issue of the bonds had been authorized by the legislature (Sp. Laws 1869, *c*. 34) to aid in the construction of the St. Paul & Chicago Railway Company, but it had been subsequently provided, by an ordinance of the city council of Hastings, that the bonds should not be issued and delivered until the railroad should be constructed and

fully completed from St. Paul, by way of Hastings, Red Wing and Lake City, and from thence to some point of connection with a railroad leading to Milwaukee and Chicago. The road was subsequently built and equipped by the Minnesota Construction Company, under a contract with the St. Paul & Chicago Railway Company, and extended from St. Paul to Winona, by way of Hastings, Red Wing and Lake City. At Winona the road connected with the Winona & St. Peter Railway, which latter connected with the La Crosse, Trempeleau & Prescott Railroad, which last connected with the Chicago, Milwaukee & St. Paul Railway, and this last mentioned road extended eastward to Milwaukee and Chicago. In consideration of the construction of the road, the St. Paul & Chicago Railway Company assigned, among other things, to the Minnesota Railway Construction Company, all gifts, donations, bounties, or aid in any form or shape, which have been, or may hereafter be made or given by any person, corporation, municipality or state, to aid in the construction of the said railway. The bonds were thereafter demanded by the railway company, with the concurrence of the construction company, but the city refused to issue the same, and these proceedings were thereupon instituted.

*Bigelow, Flandrau & Clark,* for relator.

*Clagett & Searles,* for respondent.

BERRY, J. 1. In *Supervisors of Ramsey County* v. *Heenan,* 2 Minn. 281, (330,) it was held that, upon an inquiry whether an alleged statute has been passed in accordance with the requirements of the constitution, "the court may inspect the original bills on file with the secretary of state, and have recourse to the journals of the houses of the legislature, to ascertain whether or not the law has received all the constitutional sanctions to its validity."

The respondent's claim in the case at bar is, that in passing Sp. Laws 1869, c. 34, the senate did not comply with § 20, art. 4, of our state constitution, and that, therefore, said chapter is not a law. Section 20 reads in this wise: "Every

bill shall be read on three different days in each separate house, unless, in case of urgency, two-thirds of the house where such bill is depending shall deem it expedient to dispense with this rule; and no bill shall be passed by either house until it shall have been previously read twice at length."

No other objection is made to the validity of the chapter mentioned, and, to sustain this, the respondent relies wholly upon the senate journal.    The enrolled bill (the original of said chapter) on file in the office of the secretary of state is properly authenticated, in accordance with section 21, article 4, of our constitution, which provides that "every bill, having passed both houses, shall be carefully enrolled, and shall be signed by the presiding officer of each house."    The effect of a compliance with this direction of the constitution is to authenticate the bill, and, being thus authenticated, it is to be presumed to have passed in accordance with the requirements of the constitution.    But, under the rule laid down in *Supervisors* v. *Heenan, supra,* this presumption is not conclusive, but may be overthrown by a reference to the journals. Section 13, chapter 4, of the constitution declares that "no law shall be passed unless voted for by a majority of all the members elected to each branch of the legislature, and the vote entered upon the journal of each house."    Section 5 of the same chapter provides that the senate and house "shall keep journals of their proceedings, and, from time to time, publish the same; and the yeas and nays, when taken on any question, shall be entered on such journals;" and there are other provisions of the constitution specifically requiring certain facts to be entered upon the journals of the houses.    See sections 11 and 30, same chapter.    Now, whatever might be the effect of the failure of the journals to show the entry of any of these matters specifically required to be entered, it is obvious that the presumption arising from the authentication of an enrolled bill, under section 21, cannot be overcome by the failure of the journals to show any fact which is not

v.24m—6

required to be entered therein. Of this character are the facts with regard to the reading of a bill, under section 20. There is no provision of the constitution specifically requiring their entry upon the journal. For the respondent it is argued that they are required to be entered by the latter clause of section 5, which declares that the two houses "shall keep journals of their proceedings." But, except in the cases in which the constitution specifically requires certain facts to be entered, this clause leaves the question of how full and minute the journals shall be in the uncontrolled discretion of the legislature, so that the failure of the journals to show, by an entry, that any particular thing was done, furnishes no evidence or presumption as to whether it was done or not, save in the cases in which an entry is specifically required by the constitution. In the case at bar there is nothing in the journals to show that the provisions of section 20 were not complied with, on the passage of the bill in question.

From the foregoing considerations it follows, then, that the presumption arising from the due authentication of the bill (Sp. Laws 1869, c. 34) is not overthrown by the journals, and it is therefore to be taken to have passed in accordance with the directions of the constitution. These views are well supported by the opinion pronounced by *Thurman*, C. J., in *McMiller* v. *State*, 3 Ohio, (State,) 475, and by *Caton*, C. J., in *Supervisors of Schuyler Co.* v. *People*, 25 Ill. 181.

In the view which we have taken it has not been necessary to consider the relator's point that the provisions of section 20 do not apply to an amendment to a pending bill.

2. The passage of the ordinance and its sanction by the legal voters, as provided in Sp. Laws 1869, c. 34, had an effect, as respected the city of Hastings, analogous to that described in the opinion of this court in *State* v. *Town of Lime*, 23 Minn. 521. It is there said that the adoption of a certain resolution, corresponding in its purpose to the ordinance in this case, "created a statutory and legal obligation against the town, in favor of the company therein named, to issue to it

the amount of bonds therein provided, upon the performance of its conditions and on compliance with its terms. * * * No formal acceptance nor written agreement was required of the company to give validity and effect to the resolution. It was in the nature of a standing offer, which the company was at liberty, at any time before it was rescinded or withdrawn, to avail itself of, by entering upon the construction of the road, and complying with the terms and conditions of the resolution, in the manner and within the time therein specified."

*Mutatis mutandis,* these observations are completely applicable to the case at bar, and the right to avail itself of the standing offer spoken of, being a valuable right, was something which it was competent for the St. Paul & Chicago Railway Company to transfer, so as to authorize another to receive the benefit of it in its stead. Having, subsequent to the passage of the ordinance and its sanction by the legal voters, entered into a contract with the relator, the Minnesota Railway Construction Company, for the construction of its railroad, it "agrees to sell, transfer and assign" to the latter company, among other things, "all gifts, donations, bounties or aid, in any form or shape, which have been or may hereafter be made or given by any person, corporation, municipality, or state, to aid in the construction of said railway." This language was sufficient to comprehend the right of the railway company to avail itself of the standing offer before spoken of, and to authorize the construction company to receive the benefit of it. Certainly the term "aid" would include this right, and it is in effect so decided, with reference to the very bonds involved in this case, in *Warsop* v. *City of Hastings,* 22 Minn. 437.

3. The respondent insists that as the offer contained in the ordinance is made to the St. Paul & Chicago Railway Company, the fact of the transfer of the right of that company to the bonds to the relator must be communicated to the city, and the delivery of the bonds be refused upon a demand, before the failure of the city to deliver the same can be deemed

wrongful. As no such communication is shown, the respondent claims that the relator has not entitled itself to compel the issuance and delivery of the bonds in the present proceeding.

The stipulation in the case shows that Edmund Rice, being fully authorized by the St. Paul & Chicago Railway Company and by the relator to demand and receive the bonds in question of the respondent, did, on behalf of both companies, make demand of the bonds upon the respondent's mayor, and that the matter being brought before the respondent's common council, the mayor was instructed by it to notify Mr. Rice "that the council declined to isssue the bonds." In pursuance of this instruction the mayor sent a note to Mr. Rice, informing him that he had been instructed by the council to say to him "that the city should decline to issue the bonds, claiming that all questions had not been decided by the supreme court." The decision of the supreme court referred to was made in the case of *Warsop* v. *City of Hastings*, 22 Minn. 437, a case in which the obligation of the city to issue the bonds was contested and passed upon. Upon the state of facts thus disclosed by the stipulation, as, in making the demand, Mr. Rice was in fact acting not only for the St. Paul & Chicago Railway Company, to which the ordinance in terms referred, but also for the construction company, we are of opinion that, in placing the refusal to issue upon the ground that all questions had not been decided by the supreme court, and in absolutely refusing to issue the bonds at all, the city is to be taken as having waived any other objection to the sufficiency of the demand made by Mr. Rice, either as respected his authority to make it for the construction company, or the authority, or notice of the authority, of that company to have the demand made, and to receive the bonds by virtue of the transfer before spoken of.

4. The city ordinance under which the relator claims the bonds of the respondent contained the following provision, viz.: "*Provided*, however, that said bonds shall not be issued

or delivered to said company until said railway shall be constructed and fully completed from St. Paul, by the way of the city of Hastings, Red Wing and Lake City, and from thence to some point of connection with a railroad leading to Milwaukee and Chicago, with the cars running thereon. * * * *Provided, further,* that said railway shall be so completed and in operation from St. Paul to said point of junction with some other railroad leading to Milwaukee and Chicago aforesaid, on or before the first day of March, 1872." The respondent claims that these provisos required the railway company to connect its road with a railroad "whose line of railway reached Milwaukee and Chicago;" or, as he otherwise expresses it, "with a railroad that terminated at Milwaukee and Chicago." We do not take this to be the fair import of the language of the provisos. In our opinion, in their natural and ordinary signification, the words, "a railroad leading to Milwaukee and Chicago," embrace not only a railroad whose line reaches Milwaukee and Chicago, or "terminates" at these places, but a railroad connecting either directly or by way of another railroad whose line reaches Milwaukee and Chicago, and "terminates" at those places. From the stipulation in the case it appears that the connection made by the St. Paul & Chicago Railway Company was of the latter character, and it was therefore sufficient to satisfy the demands of the city ordinance. *Van Hostnep* v. *Madison City,* 1 Wall. 291.

The respondent's last point, to-wit, that it does not appear that the St. Paul & Chicago Railway Company, personally, so to speak, constructed, equipped, or operated their road, is disposed of by a reference to the terms of the provisos. They only require that these things shall be done, and not that they shall be done by the St. Paul & Chicago Railway Company personally.

Let a peremptory *mandamus* issue in accordance with the prayer of the alternative writ.