STATE OF MINNESOTA *ex rel.* S. E. Eastland *vs.* WALTER K. GOULD.

## November 1, 1883.

**Constitution—Laws Creating Courts.**—The "two-thirds vote," by which our constitution authorizes the legislature to establish new courts, is a vote in each house of two-thirds of all the members thereof.

Petition for a writ of prohibition to restrain the respondent, claiming to be and acting as judge of the so-called Municipal Court of the City of Moorhead, in Clay county, from proceeding further in an action brought therein by one Arimond against Eastland, the relator.

At the same time, the attorney general, on the relation of one Jacobson, obtained a writ restraining respondent from proceeding in another action, and to show cause, etc.

*Chas. C. Willson, R. B. Galusha* and *J. Kling,* for relators.

*R. W. Coleman,* for respondent.

BERRY, J. "The judicial power of the state shall be vested in a supreme court, district courts, courts of probate, justices of the peace, and such other courts inferior to the supreme court as the legislature may from time to time establish by a two-thirds vote." Const. art. 6, § 1.

What is a *two-thirds* vote is the question in this case. The same or similar language is found in other parts of the constitution. By a "two-thirds vote" the legislature may increase the number of associate justices of the supreme court, (article 6, § 2;) may provide for the holding of terms of the supreme court in each judicial district, (Id.;) and may pass a general banking law, (article 9, § 13.) If, upon reconsideration of a bill returned by the governor, "two-thirds of that house" in which it originated agree to pass it, it is to be sent to the other house, and if approved by "two-thirds" of that house, it shall become a law. Article 4, § 11. If, upon reconsideration of an appropriation bill, one or more items thereof objected to by the governor are "approved by two-thirds of the members elected to each house," the same shall become part of the law. Id. Orders, resolutions, and votes, requiring the concurrence of the two houses, (except such as relate to their business or adjournment,) if returned by the governor with objections, "shall be repassed by two-thirds of the members of the two houses." Article 4, § 12. "Whenever two-thirds of the members elected to each branch of the legislature" shall think it necessary to call a constitutional convention, they shall recommend, etc. Article 14, § 2.

The constitution also provides that a majority of each house shall constitute a quorum for the transaction of business, (article 4, § 3,) and that "no law shall be passed unless voted for by a majority of all the members elected to each branch of the legislature, and the vote entered upon the journal of each house." Id. § 13.

These are all the constitutional provisions that throw light directly upon the question in hand. They show—*First*, that while a majority of the members of each house constitute a quorum, *no law*, however unimportant, can be passed without the votes of a majority, in each branch of the legislature, of *all the members elected* to that branch. *This is the general rule of legislation prescribed by the constitution.*

In the second place, it appears that there are certain particular subjects which are not left to the operation of this general rule. For this but one sensible reason can possibly be assigned. Certainly those subjects could not have been singled out from the mass because they were of less importance than those of ordinary legislation. The pro-

visions for the creation of new courts, for the increase of the judges of the supreme court, and for making that court itinerant, are in effect provisions for changing the constitution itself; that is to say, the legislature is authorized to change the rule which the fundamental law *specifically* prescribes in the premises. Irrespective of this consideration, the establishment of new tribunals for the administration of justice, the increase of the number of judges of the highest court in the state, the places where that court should be held, and the question whether a policy which has been discarded in almost every other community, viz., that of making this court itinerant, shall be adopted here, are subjects which manifestly transcend in general and public importance those of ordinary legislation. That a general banking law is, for the most obvious yet weighty reasons, one of extraordinary importance, will not be questioned. In conformity with a practice which we believe to be of universal prevalence in this country, our constitution has, for reasons of acknowledged wisdom, conferred the veto power upon the executive. The enactment of a law over a veto is an extraordinary exercise of legislative power. It overrides the official disapproval of the proposed law by one of the three grand departments of the government; a disapproval authorized by the constitution, and which (in the particular instance) it is presumably the constitutional duty of that department to express. These remarks apply with equal force to the legislative approval of items of an appropriation bill, and of orders and resolutions objected to by the governor, under art. 4, §§ 11, 12.

From these and other obvious considerations, which we will not take time to specify, it is apparent that all this legislation requiring the sanction of a two-thirds vote is of an extraordinary character, and hence it is reasonable to expect that if any distinction were to be made by the constitution between it and ordinary legislation, it would be by surrounding it with extraordinary precaution, rather than the contrary. We entertain no doubt, therefore, that it is the intent of the constitution that the passage of these extraordinary measures shall require a vote, larger than a majority of each house, of all the members thereof. It follows that the two-thirds vote cannot be a

mere two-thirds of a quorum, *i. e.*, of a majority. Any such construction would lead to absurd consequences, and, among others, to the result that a bill could be passed *after* a veto by a vote less than is required to pass it *before* a veto.

A two-thirds vote must mean either a vote of two-thirds of a quorum, *i. e.*, of a majority of each house, (as we have seen that it does not,) or a vote in each house of two-thirds of all the members thereof. There is no middle ground—no stopping place—between these two constructions. There is no authority whatever for saying that by a two-thirds vote is meant two-thirds of the members present, provided such two-thirds is a majority of all the members of the branch. This construction would lead to the consequence that one of the extraordinary measures of which we have spoken might be passed by the same vote by which any law could be passed; that is to say, a bare majority of all the members could pass it. Neither is there any authority for saying that by a two-thirds vote is meant the vote of two-thirds of the members present, provided such two-thirds exceeds a majority of all the members of the branch. Any such construction is purely arbitrary. There is no better warrant for saying that a number of votes exceeding a majority by one is sufficient, provided it is two-thirds of all the members present, than there is for requiring such number to exceed a majority by two or ten or by any other number of votes less than is necessary to embrace all the members of the branch.

In our judgment the substance of the whole matter is that, as respects the *passing* of laws, the constitution recognizes two votes only,—a majority vote and a two-thirds vote,—the latter greater than the former; and as the former is a vote in each house of a majority of all the members thereof, so, by a natural, and, as it seems to us, an inevitable construction, the latter is a vote in each house of two-thirds of all the members thereof. From this it follows that the act establishing the municipal court of Moorhead, (Sp. Laws 1883, *c.* 10,) having received upon its final passage in the house of representatives only 53 votes out of an entire membership of 103, was not passed by a two-thirds vote as required by the constitution, and it is, therefore, void.

We have examined all the cases and other authorities claimed by counsel to be opposed to the conclusion at which we have arrived, but we think that none of the constitutions to which they relate required (as does ours) a majority vote of all members elect to pass a law. This is, in our opinion, a decisive distinction.

We have not adverted to the provisions of the constitution requiring a two-thirds vote to expel a member, (article 4, § 4,) or to that which requires the vote of "two-thirds of the house" to suspend the rule that every bill shall be read on three different days, (article 4, § 20;) for, whatever they may mean, the provision requiring a majority of all the elected members to pass a law does not appear to apply to them.

The authority of this court to resort to the journals of the legislature in order to ascertain whether a law has been constitutionally passed, is settled by *County of Ramsey* v. *Heenan,* 2 Minn. 281, (330,) and *State* v. *City of Hastings,* 24 Minn. 78, and upon this point we accordingly declined to hear argument.

Let a writ of prohibition absolute issue as prayed for.