COMSTOCK *v.* TRACEY.

*(Circuit Court, D. Minnesota. May 15, 1891.)*

1. STATUTES—ENACTMENT—PRESUMPTIONS.
    Act Minn. March 4, 1872, (Sp. Laws, c. 177, p. 558,) establishing the court of common pleas of Hennepin county, being duly enrolled and signed by the presiding officers of each house, approved by the governor, and promulgated with the other laws of the session, the court will presume that it was legally enacted, and will not, in a collateral proceeding in which the validity of a judgment rendered by that court is questioned, resort to the journals of the two houses of the legislature to ascertain whether the act was passed in accordance with Const. Minn. art. 6, § 1, requiring a two-thirds vote by the legislature for the establishment of courts in addition to those enumerated.

2. FRAUDULENT CONVEYANCES—PLEADING—JUDGMENT.
    A petition by an assignee in bankruptcy to set aside a deed made by the bankrupt alleged that it was executed in May and recorded in December, and was not delivered until long after it was recorded; that there was no actual change in the possession of the property; that the consideration expressed (one dollar) was fictitious; that the grantee accepted the deed within six months before the filing of the grantor's petition in bankruptcy, with a view to cover up the property in the interests of the grantor, who retained possession and control of the property, in the false and fraudulent pretense that he was the agent of the grantee; that the real value of the property was $6,000; and prayed that the deed be adjudged fraudulent and void as against plaintiff, and for general relief. The findings of fact were that the grantee was a sister of the grantor, who was insolvent at the time of the execution of the deed; that it was not delivered until more than a year after it was executed; that no consideration was ever paid; and that the grantee had no knowledge of the deed until after the grantor's bankruptcy. *Held*, that these averments and findings were sufficient to support a judgment setting the deed aside.

At Law.

Action for the recovery of the possession of the middle third of lots numbered 1, 2, and 3, in block No. 4, in Groveland addition to Minneapolis. The case was tried by the court without a jury, upon an agreed statement of facts, substantially as follows:

"For the purpose of the first trial of the above-entitled cause the parties thereto hereby stipulate and agree that the following statements are true;

both parties, however, being at liberty to object to the competency or materiality of any or all of said facts as evidence upon said trial.

"(1) Said plaintiff was at the beginning of this action and is a citizen and resident of the state of New York, the defendant was then and is now a citizen and resident of the state of Minnesota, and the value of the real estate in controversy exceeds six thousand ($6,000) dollars.

"(2) One Joseph Hodges formerly owned the whole of block four (4) in Groveland avenue addition to Minneapolis, in Hennepin county, Minn., in which block said land is situated, and is the common source of title of the parties hereto.

"(3) Under date of May 25, 1873, said Hodges and his wife, then residing at said Minneapolis, executed an instrument in the form of a warranty deed of said block four, (4,) naming his sister, the plaintiff herein, as grantee, purporting to convey the same to her for a consideration of one (1) dollar. Said instrument, which is the basis of plaintiff's claim of title herein, was acknowledged by said grantors on May 30, 1873, and was filed and recorded in the registry of deeds of said Hennepin county on December 1, 1873, at 9 o'clock A. M.

"(4) On the 13th day of February, 1874, said Joseph Hodges, who still resided at Minneapolis, Minn., filed in the district court of the United States for the district of Minnesota, under the act of congress then in force, his petition in bankruptcy, upon which he was afterwards duly adjudged a bankrupt, and one William E. Hale was duly appointed as his assignee. Having qualified as such assignee, all the real and personal estate of which said Hodges was the owner, or to which he was in any way entitled, at the date of his said petition, was duly assigned to said Hale, and the deed of assignment thereof was duly recorded in the registry of deeds of said Hennepin county on July 28, 1874.

"(5) On or about August 17, 1874, said Hale, as such assignee in bankruptcy, instituted an action in the court of common pleas of said Hennepin county, which said action was therein prosecuted to final judgment; which action was to have the said deed from Joseph Hodges and wife to said Sarah E. Comstock adjudged fraudulent and void as against the plaintiff in that action.

"(6) Said judgment has never been appealed from, modified, or reversed. A notice in due form of the pendency of said action was filed and recorded in the registry of deeds of said county on August 17, 1873, and a duly-certified copy of the final judgment aforesaid was likewise filed and recorded therein on July 1, 1876, the day after its entry in the clerk's office. Nothing in any part of this stipulation shall be construed to be an admission on the part of the plaintiff that said court of common pleas was ever constitutionally created or legally existed, or that said alleged judgment is a valid judgment. At the commencement of said action, and during all the proceedings therein, the said plaintiff was not a resident of the state of Minnesota.

"(7) Said William E. Hale, as such assignee, in pursuance of an order of said United States district court empowering him to sell the estate of said bankrupt, including the real estate now in controversy, in consideration of three thousand six hundred and fifty (3,650) dollars, to him paid by one A. Y. Davidson, executed a conveyance of said premises and other lands to said Davidson, dated February 23, 1877, and duly recorded in said county on August 23, 1877. The money so paid by said Davidson was duly applied to the payment of said bankrupt's debts.

"(8) Whatever title to the premises herein involved was acquired by said Davidson by virtue of the proceedings aforesaid duly passed by mesne conveyances to one George F. French, and on May 13, 1881, this defendant purchased and took a conveyance of the same from said French for a valuable

consideration, without knowledge that said plaintiff made any claim of title thereto, and without notice of any defect in the title of said French other than such as is to be implied by law from the records and proceedings herein mentioned. Upon such purchase defendant proceeded to occupy said real estate, and to build up and otherwise improve the same, and now occupies same as his place of residence. * * *

"(10) The act of legislature of Minnesota establishing said court of common pleas (chapter 177, Sp. Laws 1872) is printed in the official volume of said laws, beginning on page 558. The bill for said act (House File No. 115) passed the house of representatives, as appears by the printed journal thereof, on February 21, 1872, by a vote of yeas, 68, nays, none. It passed the senate on February 26, 1872, but the journal does not show how many votes were cast either for or against the same. The legislature of that year consisted of forty-one (41) senators and one hundred and six (106) representatives. The bill was duly enrolled and signed by the presiding officer of each house, and was approved by the governor of said state on March 4, 1872. Said court of common pleas was soon after organized, pursuant to the provisions of said act, and continued to exercise all the powers purporting to be conferred by said chapter 177 until February 26, 1877, when it was merged in the district court for the fourth judicial district, by chapter 103 of the General Laws of 1877.

"(11) The following acts, regularly adopted and approved, pertaining to said court, have been passed by the legislature of Minnesota, none of which, however, are shown by the journals to have been passed by a two-third vote:

"'(a) Chapter 44, Gen. Laws 1875, p. 77, requiring the judges of the several common pleas courts of the state to meet with the district judges, to formulate rules of practice governing procedure in both courts.

"'(b) Chapter 243, Sp. Laws 1876, p. 316, amending the act of 1872 by providing for a transfer of causes to the district court in case the judge is interested in the litigation, and for calling in the judge of another court of common pleas in case of illness.

"'(c) Chapter 103, Gen. Laws 1877, p. 194, merging the court of common pleas of Hennepin county with the district court of the fourth judicial district, and continuing the judge of the former court in office as one of the judges of the latter; also transferring to the latter court all pending causes.'

"It is further stipulated herein that all questions relating to the title or right of possession of said real estate may be tried and determined by the court without a jury."

The other facts necessary to the determination of the action are stated in the latter part of the opinion of the court.

*F. C. Stevens* and *Cobb & Wheelwright*, for plaintiff.

*Daniel Fish*, for defendant.

THOMAS, J., (*after stating the facts as above.*) Upon these conceded facts the plaintiff contends that the judgment of the court of common pleas of Hennepin county in *Hale* v. *Comstock*, avoiding the deed from Joseph Hodges and wife to the plaintiff, under which she claims title to the property in question, is, and was at the time of its rendition, absolutely void, because said court was never constitutionally created or established. Section 1, art. 6, of the constitution of the state of Minnesota reads as follows:

"The judicial power of the state shall be vested in the supreme court, district courts, courts of probate, justices of the peace, and such other courts, in-

ferior to the supreme court, as the legislature may from time to time establish by a two-thirds vote."

The supreme court of the state of Minnesota has held in *State* v. *Gould*, 31 Minn. 189, 17 N. W. Rep. 276, that the "two-thirds vote by which the constitution authorizes the legislature to establish courts is a vote in each house of two-thirds of all the members thereof." Under the stipulation allowing either party to object to any or all of the facts on the ground of competency or materiality as evidence, the defendant interposed an objection on the trial to that part of subdivision 10 of the agreed statement by which the plaintiff offered to prove by the journals of the two houses of the legislature that the act purporting to create the court of common pleas of Hennepin county was never passed by the requisite two-thirds vote as irrelevant and immaterial, for the reason that the question cannot be raised or determined in this action, or in any collateral proceeding; citing *Supervisors* v. *Heenan*, 2 Minn. 330, (Gil. 281;) *State* v. *City of Hastings*, 24 Minn. 78; *Burt* v. *Railroad Co.*, 31 Minn. 472, 18 N. W. Rep. 285, 289. Reference to subdivision 10 of the agreed statement shows that the bill in question was duly enrolled and signed by the presiding officers of each house, was approved by the governor, and promulgated along with the other laws of the session of the year 1872. The act upon its face must be presumed to be valid, and to have been passed in accordance with the requirements of the constitution. Relying upon its apparent validity, a judge was appointed, and the court organized in accordance with the terms of the act. For over five years that court exercised jurisdiction in civil and criminal cases in one of the most populous and important judicial districts in the state, embracing the progressive city of Minneapolis, without question, and unchallenged as to its constitutional creation. It was apparently recognized as a valid, existing court by the legislature of the state in 1875, by an act requiring the judges of the several common pleas courts of the state to meet with the district judges to promulgate rules of practice governing the procedure of both courts; in 1876, by amending the act of 1872, by providing for the transfer of causes to the district court in case the judge is interested in the litigation, and for calling in the judge of another court of common pleas in case of illness; in 1877, by an act merging this court with the district court of the fourth judicial district, and continuing the judge of the former court in office as one of the judges of the latter; also transferring to the latter court all pending cases. It is admitted that these various acts were regularly adopted and approved, except that none of them show by the journals to have been passed by two-thirds vote. Rules of property have necessarily been established, and rights vested, or supposed to have been vested, by the judgments of that court. The consequences following and naturally resulting from a judgment declaring the judgments of the court absolutely void would or might be serious. In view of these facts and consequences, this court, sitting and exercising jurisdiction in this state, should approach the question involved with due care and caution. Section 5, art. 4, of the constitution of the state of Minnesota is as follows:

"The house of representatives shall elect its presiding officer, and the senate and house of representatives shall elect such other officers as may be provided by law. They shall keep journals of their proceedings, and from time to time publish the same, and the yeas and nays, when taken on any question, shall be entered on such journals."

The statute of the state relating to such journals also provides:

"Each journal shall be recorded in books to be furnished by the secretary of state for that purpose. After the journals are recorded, said books shall be deposited with the secretary of state, who shall carefully preserve the same, and said records shall be considered the true and authentic journal." Gen. St. Minn. 1878, c. 5, § 23; Laws Minn. 1868, c. 46, § 23.

Should this court look to the journals and inspect them in this action for the purpose of ascertaining whether or not the act in question received the requisite two-thirds vote in each house? In other words, should this court appropriate the journals as evidence to determine the ultimate fact as to whether or not this law received the requisite two-thirds votes upon this collateral attack? The law is upon its face presumptively valid, and can only be successfully attacked, if at all, by going back of the regular authenticated enrolled bills, bearing the approval of the executive, and regularly deposited in the archives of the state. We must go to the journals to find the death wound of the statute, if at all. In view of the law as now laid down in the federal courts relative to following the decisions of the highest court of the state respecting rules of property and actions, what is our duty in relation to the facts of this case? In *State* v. *Gould, supra,* the supreme court of the state held that, in a direct proceeding to test the question of the passage of a similar law of the state in accordance with the constitutional requirements, the court would resort to the journals of the legislature in order to ascertain whether the law had been constitutionally passed. In *Supervisors* v. *Heenan, supra,* it was held that the court might inspect the original bills on file with the secretary of state, and have recourse to the journals of the legislature, to ascertain whether or not the law had received all the constitutional sanctions to its validity. There was an application for a writ of *mandamus* in that case by the supervisors of the county to compel the register of deeds to deliver to the board certain books and papers relating to the taxes of the county. The application was made under section 9 of the act of August 13, 1858. It was argued against the issuing of the writ that the act was unconstitutional, it not having been read on three different days in each house of the legislature, and twice at length, and not having been voted for by a majority of all the members elected to each house. The court examined the journals, and came to the conclusion that the act had been constitutionally passed. In *State* v. *City of Hastings, supra,* an application was so made for a writ of *mandamus* by the St. Paul & Chicago Railway Company, to compel the city of Hastings to issue certain bonds. The issue was authorized by Sp. Laws 1869, c. 34; but the city refused to issue the bonds, on the ground, as it claimed, that the senate in passing the bill did not com-

ply with section 20, art. 4, of the state constitution, which reads as follows:

"Every bill shall be read on three different days in each separate house, unless in case of urgency two-thirds of the house where such bill is pending shall deem it expedient to dispense with this rule; and no bill shall be passed by either house until it shall have been previously read twice at length."

The court, speaking through BARRY, J., said in that case:

"In *Supervisors* v. *Heenan,* 2 Minn. 330, (Gil. 281,) it was held that, upon an inquiry whether an alleged statute has been passed in accordance with the requirements of the constitution, the court may inspect the original bills on file with the secretary of state, and have recourse to the journals of the houses of the legislature, to ascertain whether or not the law has received all constitutional sanctions to its validity. The respondent's claim in the case at bar is that in passing the special laws of 1869, c. 34, the senate did not comply with section 20, art. 4, of our state constitution, and that therefore said chapter is not a law. No other objection is made to the validity of the chapter mentioned, and to sustain this the respondent relies wholly upon the senate journal. The enrolled bill on file with the secretary of state is properly authenticated in accordance with section 21, art. 4, of our constitution, which provides that every bill having passed both houses shall be carefully enrolled, and shall be signed by the presiding officer of each house. The effect of a compliance with this direction of the constitution is to authenticate the bill; and, being thus authenticated, it is to be presumed to have passed in accordance with the requirements of the constitution. But under the rules laid down in *Supervisors* v. *Heenan, supra,* this presumption is not conclusive, but may be overthrown by a reference to the journals. Section 13, art. 4, of the constitution declares that no law shall be passed unless voted for by a majority of all the members elected to each branch of the legislature, and the vote entered upon the journal of each house. Section 5, same article, provides that the senate and house shall keep journals of their proceedings, and from time to time publish the same, and the yeas and nays, when taken on any question, be entered on such journals; and there are other provisions of the constitution specifically requiring certain facts to be entered upon the journals of the houses. Now, whatever might be the effect of the failure of the journals to show the entry of any of these matters specifically required to be entered, it is obvious that the presumption arising from the authentication of the enrolled bill under section 21 cannot be overcome by the failure of the journals to show any fact which is not required to be entered thereon. Of this character are the facts with regard to the reading of the bill under section 20. There is no provision of the constitution specifically requiring their entry upon the journal. For the respondent, it is argued that they are required to be entered by the latter clause of section 5, which declares that the two houses shall keep journals of their proceedings. * * * In the case at bar there is nothing in the journals to show that the provisions of section 20 were not complied with on the passage of the bill in question. From the foregoing consideration, it follows, then, that the presumption arising from the due authentication of the bill is not overthrown by the journals, and it is therefore to be taken to have passed in accordance with the directions of the constitution."

Subsequently, at the January term of that court, an appeal from an order of the municipal court of Mankato was argued and submitted, but, before the court rendered its decision on this appeal, the case of *State* v. *Gould, supra,* was decided, and the appellant on said appeal moved the court to disaffirm the judgment appealed from, on the alleged ground that

the court rendering it was not a legal court, and its judgment therefore a nullity; because the act assuming to establish it, to-wit, "An act of November 22, 1881, entitled 'An act to establish a municipal court in the city of Mankato, Blue Earth county, Minnesota,' did not receive a vote of two-thirds of the entire senate in its passage through that body, and consequently it did not pass in accordance with the requirements of the constitution, as construed by the court at this term in the case of *State* v. *Gould*." Upon the application to disaffirm, the court, speaking through GILFILLAN, C. J., said:

"To establish the fact it [the Winona & St. Peter R. R. Co.] refers to the journal of the senate, and claims that the courts take judicial notice of the journals of the legislature in respect to the passage of bills. The plaintiff answers that the court, if not a *de jure*, was at least a *de facto*, court, and its acts and judgments cannot be impeached collaterally for want of legality in the court itself, nor its legal existence be called in question except in a direct proceeding on behalf of the state for that purpose, as was the case in *State* v. *Gould*. The argument of the defendant is that a judgment rendered without jurisdiction is void; that want of jurisdiction may always be shown; that if the legislative act under which the court assumes to act as such be void, there is a want of jurisdiction; and that, this act being void, there was no jurisdiction. Generally, if the record shows that a court has assumed jurisdiction over a matter not committed to it by the constitution or some valid statute, it may be inquired into, and the excess of jurisdiction corrected or annulled on appeal from its judgment. The defect here alleged is the non-existence in law of the court itself. That presents a somewhat different case from an exception to the right of a court admitted to exist to try particular matters. The latter is permitted, while public policy may prohibit the other."

The court then discusses the doctrine of a *de facto* court. Further along in the opinion the court said:

"We may go so far as to lay down this proposition, that, where a court or office has been established by an act of the legislature apparently valid, and the court has gone into operation, or the office is filled, and exists under such act, it is to be regarded as a *de facto* court or office; in other words, that the people shall not be made to suffer because misled by the apparent legality of such public institutions."

Again:

"The act in question having been authenticated in the proper manner, and approved by the governor, and the subject of it being within the constitutional power of the legislature, was, under the presumption cited in *State* v. *City of Hastings, supra, prima facie* a valid law, and the court it attempted to create *prima facie* a legal court."

MITCHELL, J., dissenting, with whom concurred BARRY, J., said:

"I concur in the conclusion that, under the facts of this case, the legal existence of the municipal court of Mankato cannot be attacked collaterally in this action, but only by direct proceeding for that purpose; and this, as I understand it, is, strictly speaking, the only matter properly before us at this time."

The two judges dissenting refused to adopt the doctrine of a *de facto* court. *Burt* v. *Railroad Co.*, 31 Minn. 472, 18 N. W. Rep. 285, 289.

Thus stands the law as interpreted by the supreme court of the state of Minnesota, so far as the same has been called to my attention. These decisions are to the effect that an apparent statute, regularly authenticated by the signature of the presiding officer of each house, approved by the executive, and printed and promulgated with the other session laws, is presumed to be valid, but the presumption is not conclusive; it may be overthrown by reference to the journals as evidence in a direct proceeding, but not when the attack is made collaterally. Upon that presumption rest all the judgments and determinations of the court in question. Thus by the adjudication of the supreme court of the state of Minnesota a rule of property and evidence has been established in all cases applicable. Title to real and personal property fixed and determined by the judgments of that court rest secure upon the decisions of the state. Is it the duty of this court, administering justice in the same state, to follow and respect the decisions of that court in this regard, or must we hold, in accordance with the contention of the plaintiff, that the statute was not constitutionally passed; that the judgment on which this title rests, and may rest securely under the laws of the state where the property is situated, is absolutely void; that the learned judge who presided in that court and adorned the bench during the years of its existence was a mere intruder; that the act in question, bearing upon its face all the *indicia* of its validity, created no office; that the judgments and decrees of that court are entitled to no respect, and are, in legal effect, as inoperative as though they had never been rendered; that they establish no rights and afford no protection? Independent of all precedent or judicial interpretations of the laws of congress, I could not give my consent to such a doctrine. The spirit and reason, if not the letter, of section 721 and section 914 of the Revised Statutes of the United States are opposed to the contention. But there is ample authority to sustain the position of the learned counsel for the defendant that it is the duty of this court in this case to follow the rule laid down by the supreme court of the state.

In *Hinde* v. *Vattier's Lessee*, 5 Pet. 398, the supreme court of the United States held that the circuit court of the United States sitting in Ohio rightly followed the rule of evidence as laid down by the courts of the state of Ohio, wherein the state court held that the land laws of Ohio, published by authority of that state, were admissible in evidence to prove the grant from the United States to one John C. Summes and his associates. The court, speaking through BALDWIN, J., says:

"There is no principle better established and more uniformly adhered to in this court than that the circuit courts, in deciding on titles to real property, are bound to decide precisely as the state courts ought to do; citing *Wilkinson* v. *Leland*, 2 Pet. 656. The rules of property and of evidence, whether derived from the laws or adjudications of the judicial tribunals of a state, furnish the guides and rules of decision in those of the Union, in all cases to which they apply, where the constitution, treaties, or statutes of the United States do not otherwise provide."

The federal courts follow the latest settled adjudication of the supreme court of the state, relating to rules of property and matters of a local character. *Myrick* v. *Heard*, 31 Fed. Rep. 241.

In an action of ejectment in the circuit court of the United States sitting in the state of Pennsylvania, (*Clement* v. *Packer*, 125 U. S. 309, 8 Sup. Ct. Rep. 907,) which involved a question concerning the location of the boundary of a private estate, the rule of evidence respecting the admission of the declarations of deceased persons, touching the disputed boundary, which had been laid down by the highest court of that state, is the rule which was held to govern the United States court in that case. The court, speaking through Justice LAMAR, said:

"The limitations upon this extension of the original rule are different in different states. We do not deem it necessary in the present case to lay down any definite rule applicable to all cases as to when declarations of deceased persons constitute valid evidence to establish private boundaries. The question is one involving the ownership of real property in Pennsylvania, and it becomes our duty to ascertain the rule established in that state, especially as respects the admissibility of the declarations of deceased surveyors in cases of boundaries between private estates."

The supreme court had adopted a different rule as to the admissibility of this class of evidence, as appears in *Hunnicutt* v. *Peyton*, 102 U. S. 333, and *Ellicott* v. *Pearl*, 10 Pet. 412, and relied upon to sustain the rejection of the evidence in that case; but the court said: "As the question is one of Pennsylvania law, to be controlled by Pennsylvania decisions, the observations of the court in these cases cited are not pertinent."

In *Town of South Ottawa* v. *Perkins*, 94 U. S. 260, it appears from the opinion of the court that in consideration of the constitutional provisions the supreme court of Illinois had held that it was necessary to the validity of a statute that it should appear by the legislative journals that it was duly passed in the manner required by the constitution. Justice BRADLEY, referring to that case, on page 277, said:

"It follows that the court below, on retrying the case, must itself be satisfied whether the law in question was or was not constitutionally passed, and the vote entered on the journals, and instruct the jury accordingly. The evidence or means of ascertaining this fact must be such as is legally applicable to such a case, according to the laws of Illinois."

In *Burgess* v. *Seligman*, 107 U. S. 20, 2 Sup. Ct. Rep. 10, the court, speaking through Justice BRADLEY, said:

"The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effects of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate, and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is."

In *Gormley* v. *Clark*, 134 U. S. 338, 348, 10 Sup. Ct. Rep. 554, the court, speaking through Chief Justice FULLER, said:

"Upon the construction of the constitution and laws of a state, this court, as a general rule, follows the decisions of her highest court, unless they conflict with or impair the efficacy of some provision of a federal constitution or of a federal statute, or a rule of general commercial law; citing *Norton* v.

*Shelby Co.*, 118 U. S. 425, 6 Sup. Ct. Rep. 1121. And this is so where a course of those decisions, whether founded on statutes or not, have become rules of property within the state; also in regard to rules of evidence in actions at law; and also in reference to the common law of the state, and its laws and customs of a local character, when established by repeated decisions."

In *Railroad Tax Cases*, 13 Fed. Rep. 767, Justice FIELD, giving the opinion, says:

"Under the decisions of the courts upon constitutional provisions in all respects similar to that in the present constitution of California, it is settled that the court, to inform itself, will look to the journals of the legislature."

So the supreme court of the United States holds where it is so decided by the state courts in construing their own constitution and laws. On general principles, the question as to the existence or non-existence of a statute is a judicial one, and, though framed as an issue of fact, must, when it arises in the courts of the United States, be decided by them on evidence legally applicable under the laws of the state, without the advice of a jury on the subject. *Town of South Ottawa* v. *Perkins*, 94 U. S. 261; *Sherman* v. *Story*, 30 Cal. 253–277; *Gardner* v. *Collector*, 6 Wall. 509; *Post* v. *Supervisors*, 105 U. S. 667. On page 267, *Town of South Ottawa* v. *Perkins*, *supra*, Justice BRADLEY uses this language:

"It would be a very unseemly state of things, after the courts of Illinois have determined that a pretended statute of that state is not such, having never been constitutionally passed, for the courts of the United States, with the same evidence before them, to hold otherwise."

Applying these remarks to the facts of this case, it seems to me that it would be an unseemly state of things, after the courts of the state of Minnesota have held that it would not resort to the journals as evidence or otherwise, to see if the law creating a court of general jurisdiction had been constitutionally passed in a collateral proceeding, for this court, sitting and administering justice in the same state, to hold directly to the contrary, and overturn all the judgments of the court in question, and disturb the rules of property and of action fixed and determined by that court.

Applying the principles enunciated in the foregoing cited cases, the conclusion seems irresistible that it is the duty of this court, upon the conceded facts of this case, on this collateral attack, to follow the rule laid down in *Burt* v. *Railroad Co.*, *supra*, in so far as that court holds that it will not look to the journals as evidence for the purpose of whether or not the statute in question was constitutionally passed. I do not think the rule laid down in *Norton* v. *Shelby Co.*, 118 U. S. 425, 6 Sup. Ct. Rep. 1121, so far as the facts and conclusions are applicable to the conceded facts in the case at bar, is inconsistent with the foregoing conclusions. As was well said by the counsel for the defendant in this case in his brief:

"What is really decided in the case of *Norton* v. *Shelby Co.* is that the federal court is bound by the decisions of the state court, holding that the act of the Tennessee legislature, which assumed to create a certain board of county commissioners, was in conflict with the state constitution. What is said be-

yond that is said solely with reference to the facts of the pending cases, and should not be strained to cover an entirely different case. A distinction is also to be made between an act which, like that considered in the *Norton Case*, shows its infirmity upon its face, and one like that now before the court, which, if void at all, is so because of extrinsic facts connected with the history of its passage through the legislature. If the act now in question had assumed, for instance, to establish a court having revisory powers over the supreme court, its unconstitutionality would have been apparent, as a mere matter of legal interpretation. All men are presumed to know the law, but certainly no man is presumed to know the facts as to the number of votes cast in the legislature for or against a particular bill. Questions of this kind are questions of evidence, as to the effect of which courts might differ. The act in question comes with all the *indicia* of validity. It assumes to do nothing which the legislature did not have full power to do, and the court which it apparently established was permitted, without question, to exercise the functions apparently conferred upon it. To say that, upon the subsequent discovery of some evidence of an extrinsic fact, all that such apparent court has ever done shall at once be deemed undone, or rather never done, is not warranted by the *Norton Case*."

The learned counsel who argued the *Norton Case* for the plaintiff in error in the supreme court of the United States contended that, even though the act in question in that case should be condemned as unconstitutional, yet the subscription to the stock made by the commissioners, and the bonds issued by them, while in the undisputed tenure of their office as justices of the county court, are good and binding as regards third persons and the public, including the holders of the bonds, as acts of a *de facto* court, or of *de facto* officials. The supreme court of the United States refused to sustain that doctrine, and held that—

"While acts of a *de facto* incumbent of any office lawfully created by law and existing are often held to be binding from reasons of public policy, the acts of a person assuming to fill and perform the duties of any office which does not exist *de jure* can have no validity whatever in law."

That question is not here necessarily involved, and I do not pass upon that question. That statute in question, upon the conceded facts, is presumed to have been constitutionally passed, the court in question is presumed to have been a *de jure* court, and, following the decision in *Burt* v. *Railroad Co.*, as I understand that decision upon the facts really and properly before that court, I think it is my duty to hold, as I do in this case, upon this collateral attack, that this court will not resort to the journals, or consider them as evidence or otherwise, for purposes of ascertaining whether or not that presumption can be overcome. Defendant's objection to the evidence is sustained.

But, conceding that the statute was constitutionally passed, and the court of common pleas of Hennepin county was in all respects a *de jure* court, plaintiff's counsel strenuously contends that the judgment in *Hale* v. *Comstock* was and is void, because it was not rendered within the issue presented by the complaint. The complaint in that action was as follows:

"The plaintiff in the above-entitled case complains of the defendant in said cause, and shows to the court—

"(1) That on the 13th day of February, A. D. 1874, the said Joseph Hodges filed in the district court of the United States for the district of Minnesota his petition, pursuant to the eleventh section of the act of congress entitled ' An act to establish a uniform system of bankruptcy throughout the United States, approved March 2, 1867,' praying that he might be adjudged to be a bankrupt within the purview of said bankrupt act; that thereafter, and on the said 13th day of February, 1874, such proceedings were had in said court in bankruptcy in said matter of said Hodges; that the said Hodges was adjudged to be a bankrupt; that thereafter, and on the 6th day of May, 1874, such proceedings were had in said bankruptcy matter; that said plaintiff was by said court duly appointed assignee therein; that said plaintiff accepted said trust, and duly qualified as such assignee, and thereafter, and on the 15th day of June, 1874, received from Albert Edgerton, Esq., register in bankruptcy of said district, an assignment and conveyance, under the hand of said register and the seal of said court, of all the estate to which the said Joseph Hodges was, on the 13th day of February, 1874, in any manner entitled, and thereafter said plaintiff entered upon his duties as such assignee.

"(2) And said plaintiff further says that on the 30th day of May, 1873, at the city of Minneapolis, of said state of Minnesota, the said Joseph Hodges and his wife made and executed a certain deed to said defendant, a copy of which deed is hereto attached, made a part of this complaint, and marked ' Exhibit A,' pretending to convey to said defendant the following described property situate in the county of Hennepin and state of Minnesota, to-wit, block four, (4,) Groveland addition to Minneapolis, according to the record plat thereof on file in the office of the register of deeds for Hennepin county; that said deed was recorded in the office of the register of deeds in and for said county on the 31st day of December, A. D. 1873, at 9 o'clock in the forenoon of said day, in Book number forty-three (43) of Deeds, on page six hundred and three, (603.)

"(3) And said plaintiff further says that the said deed was not delivered to said defendant, nor to any person for her, until long after the same was recorded, nor did defendant know of such deed until after the same was recorded; that said deed was not accompanied by an immediate and actual change of possession of the property; that ever since the same was executed and delivered, and up to the present time, the said property has remained in the actual possession and under the control of said Joseph Hodges, who has retained possession and control thereof under the false and fraudulent pretense that he is the agent of said defendant.

"(4) That the pretended consideration set forth in said deed as paid by defendant to said Joseph Hodges and his wife is fictitious; that in fact no consideration, nor was ever any consideration, received by said Hodges or paid by defendant for said deed, but that said consideration of one dollar is therein inserted for the purpose of deceiving creditors of the said Hodges.

"(5) That at the time of the making, recording, and delivery of said deed the said Joseph Hodges was largely indebted to many persons, amounting in the aggregate to the sum of fifty thousand dollars, and was then insolvent, and in contemplation of bankruptcy, all of which the said defendant then well knew; that said deed was delivered to defendant within six months before the filing of the said petition heretofore mentioned, by said Hodges, and accepted by said defendant, with a view to prevent the property therein described from coming to his (said Hodges') assignee in bankruptcy, and to prevent the same from being distributed according to said bankruptcy act, and for the purpose and with the intent to hinder, delay, and defraud the just creditors of said Hodges of their lawful claims and demands.

"(6) That said Hodges was, as a matter of fact, notwithstanding the making, recording, and delivery of said deed on the 13th day of February, A. D.

1874, and for a long time prior thereto had been, the true and lawful owner in fee-simple of said described property; that the real value of said property is six thousand (6,000) dollars; that by virtue of said assignment the said land became on the 13th day of February, 1874, the property of said plaintiff.

"Wherefore, said plaintiff demands judgment: That said deed from said Joseph Hodges and wife to said defendant be adjudged fraudulent and void as against the plaintiff, and for such other and further relief as to the court may seem meet, and the costs and disbursements of this action.

"Dated Aug. 14, 1874, Minneapolis, Minn."

The defendant did not appear. Service was had upon her by publication, in compliance with the laws of the state. The court acquired jurisdiction by such service to render a verdict in rem in that case. *Arndt v. Griggs*, 134 U. S. 316, 10 Sup. Ct. Rep. 557.

The contention of the plaintiff is that the complaint sets forth a cause of action only under the thirty-fifth section of the United States bankruptcy act, and that the form of action under that section requires the existence of four different facts, which constitute the essential averments of the complaint in *Hale* v. *Comstock*, namely: (1) The party making the transfer must be insolvent, or in contemplation of insolvency. (2) The recipient must be one who has reason to believe him insolvent, or acting in contemplation of insolvency. (3) The conveyance must be made within six months prior to the filing of the petition in bankruptcy. (4) The act must be done to prevent the property from coming into the hands of the assignee in bankruptcy, and from being distributed under the bankrupt law. It is claimed by plaintiff that none of these essential facts appear in the findings or in the decree. The court found that there was no delivery of the deed prior to June, 1874; that there was no consideration paid for the same; that there was no knowledge on the part of the defendant of its existence; and that upon these facts the court based its conclusion of law; "that, no delivery of the deed having been made prior to Hodges' adjudication as a bankrupt, no title passed by it; and that the plaintiff was entitled to judgment vacating and setting aside said deed," and that the judgment itself declares that said deed be vacated and set aside, and declares it to be null and void and of no effect.

Upon an inspection of the complaint, the findings of fact, and conclusions of law, and after careful consideration of the elaborate and exhaustive brief of the learned counsel for the plaintiff, and the cases cited, I am unable to sustain the contention of the plaintiff. On the contrary, I think that the findings and judgment in that case are within the issue tendered by the complaint. The complaint is inartificially drawn, but I am of the opinion that it contains issuable facts sufficient to sustain the judgment. The court had jurisdiction of the parties and of the subject-matter for the purpose of that action, and the subject-matter of the action was the alleged right of the plaintiff to have the deed in question made in fraud of creditors annulled in so far as might be necessary to enable him to appropriate the property therein described to the payment of grantor's creditors. It is alleged that the deed was executed in May, 1873, recorded in December, 1873, and not delivered

to the grantee till long after it was recorded; that there was no actual change in the possession of the property; that the consideration expressed ($1) was fictitious; that the grantor was insolvent at the time; and that the grantee accepted the deed within six months before the filing of the debtor's petition in bankruptcy, with a view to cover up the property in the interests of the grantor; that he retained possession and control of the property in the false and fraudulent pretense that he was the agent of the defendant, the grantee; that Hodges was in fact the real owner; that the real value of the property was $6,000. The prayer of the complaint is that this deed be adjudged fraudulent and void as against the plaintiff, and for general relief.

The findings of fact are that the defendant was a sister of Hodges', who was insolvent at the time of the execution of the deed, and that it was not delivered to her until about June, 1874, long after the bankruptcy proceedings were instituted, and that it did not appear that any consideration was paid, or even that the defendant had any knowledge of the transaction until after Hodges had been adjudged a bankrupt. These averments were sufficient to support the findings and judgment. Eliminate every other averment from the complaint, and I think it necessarily follows from the remaining averments that a cause of action is set forth in the complaint sufficient to support the judgment. The supreme court of the state of Minnesota have had this question before it in the parallel case of *Lane* v. *Innes*, 43 Minn. 137, 45 N. W. Rep. 4, and I think the law laid down in that case is applicable here, and the principles enunciated in that case I adopt. That court said:

"In considering this and several other objections to the validity of the judgment, the distinction between errors and defects which go to the jurisdiction and renders the proceeding wholly void, of no effect, and such as must be remedied in the same proceeding by appeal or otherwise, must be carefully observed. Quoting *Salter* v. *Hilgen,* 40 Wis. 365, 366: 'It is not enough that there are irregularities in practice or insubstantial variances between the summons and complaint, or that the pleading is double, or improperly unites several causes of action, or contains more allegations or grounds for relief than is essential, or that the complaint is defective or incomplete, or that the findings of the court fail to cover all the issues tendered. If the matters determined are decisive of the case, and within the general scope of the allegations made and relief asked, the determination is not void, though the defendant has not appeared.' "

Judgment must be entered for the defendant, and it is so ordered.