STATE OF MINNESOTA *vs.* FRED PETERSON and another.

January 30, 1888.

**Enactment of Law — Presumption as to Validity — Legislative Journals.**—A bill which is duly enrolled, authenticated, and approved is presumed to have been passed by the leg.slature in conformity with the requirements of the constitution, unless the contrary be made affirmatively to appear; and the proof furnished by the journals, in matters of procedure, must be clear, in order to overcome this presumption. It is not overthrown by the failure of the journals to show any fact which is not specially required by the constitution to be entered therein. Following *State* v. *City of Hastings*, 24 Minn. 78.

**Same—Presumption as to Vote on Second Reading.**—Where the record, as appearing upon the journal of the house, showed that an act "was read the first time, and, on motion, the bill was read the second time, and placed on file for third reading," the vote upon which the bill was ordered to a second reading not appearing, it will be presumed, in support of the action of the house, that the motion was adopted, and rule dispensed with, by the requisite two-thirds vote.

**Sale of Intoxicating Liquors — Licenses in Cities.**— The provisions of chapters 5, 6, and 81, Laws 1887, in relation to the sale of intoxicating liquors, are made specially applicable to cities, and supersede all inconsistent charter provisions as to the terms and conditions upon which licenses may be issued.

**Same—Local Legislation not Necessary.**—These provisions are complete in themselves, and do not necessarily require any additional local legislation by city councils to render them operative and effectual.

**Same—Issuance of Licenses in Minneapolis—Records in Comptroller's Office—Evidence.**—Under the charter of the city of Minneapolis, the city council may act upon applications, and cause licenses to be issued, under the provisions of the General Laws referred to; and the comptroller is a proper officer to issue the same, upon the direction of the council. The records of his office touching the issuance of licenses are competent evidence of all matters shown thereby.

**Same — Unlawful Sale—Conviction — Sentence—Fine and Imprisonment.**—Upon the conviction of a party for the violation of the provisions of Laws 1887, c. 81, § 1, the court sentenced him to imprisonment in the county jail for 30 days, and to pay a fine of $75 and costs, "and to stand committed to the county jail until such fine and costs are paid,

not exceeding 30 days in addition to the 30 days' imprisonment." *Held* a legal and valid judgment. The commitment in default of the payment. of the sum named is not a part of the penalty imposed for the offence,. but is to compel obedience to the order of the court directing the payment of a' fine.

The defendants were tried and convicted in the district court for Hennepin county, before *Young*, J., and a jury, on the indictment set forth in the opinion, and they appeal from the judgment.

*Thomas Canty*, for appellants.

*Moses E. Clapp*, Attorney General, and *Frank F. Davis*, for the State.

VANDERBURGH, J. The defendants were tried upon the following indictment, viz.: "Fred Peterson and John Pierson are accused by the grand jury of the county of Hennepin, in the state of Minnesota, by this indictment, of the crime of keeping open on the Sabbath day a place where the sale of intoxicating liquors was licensed, committed, as follows: The said Fred Peterson and John Pierson did on the 24th day of July, 1887, at the city of Minneapolis, in said Hennepin county, wilfully, unlawfully, and wrongfully keep open that certain place where the sale of intoxicating liquors was then and there licensed, said place being then and there known, designated, and described as 323 on 20th Ave. North, in said city of Minneapolis, the said 24th day of July, 1887, being then and there the Sabbath day; contrary to the statute in such case made and provided, and against the peace and dignity of the state of Minnesota.   *  *  *"

1. The indictment is sufficient. It thereby appears that the place where the alleged offence was committed was within the city of Minneapolis, in Hennepin county. It was established on the trial that the defendants were keeping a saloon at the place designated during the month of July, 1887, and there was evidence reasonably tending to prove that it was kept open by them on the 24th day of that month, being the Sabbath day.

2. The prosecution is brought under the provisions of Laws 1887, *c.* 81, § 1, which among other things provides as follows: "All places where the sale of intoxicating liquors shall be licensed, under the provisions of any law or ordinance, shall be closed during all hours of

every Sabbath day, and of every general or special election day; and any person violating any of the provisions of this section shall be guilty of a misdemeanor, and, on conviction thereof by any court having jurisdiction, shall be punished by a fine of not less than $30 nor more than $100, and costs of prosecution, and by imprisonment in the county jail not less than ten nor more than thirty days."

The validity of this act is attacked by the defendants, on the ground that it was not constitutionally passed, in that it appears to have been read twice on the same day in the house of representatives, without suspending the rules, as required by article 4, section 20, of the constitution, which provides as follows: "Sec. 20. Every bill shall be read on three different days in each separate house, unless, in case of urgency, two-thirds of the house where such bill is depending shall deem it expedient to dispense with this rule; and no bill shall be passed by either house until it shall have been previously read twice at length." The defendants contend that this rule was disregarded by the house, in violation of the plain provisions of this section, and rely upon the following entry in the House Journal, (p. 559:) "S. F. 454. A bill for 'An act to amend chapter 16, General Statutes of 1878, relating to intoxicating liquors,' was read the first time, and on motion of Mr. Potter the bill was read the second time, and placed on file for third reading."

We do not think that the inferences to be drawn from this record support the contention of the defendants. It is true the constitution (article 4, § 5) directs that the houses shall "keep journals of their proceedings;" but in respect to such journals this court held, in *State v. City of Hastings*, 24 Minn. 78, that, except in cases where the constitution specifically requires certain facts to be entered, this clause leaves the question of how full and minute the journals shall be in the uncontrolled discretion of the legislature, so that the failure of the journals to show by an entry that any particular thing was done furnishes no evidence or presumption whether it was done or not, save in cases where an entry is specially directed by the constitution. It is not questioned, in this instance, that the bill was duly enrolled, authenticated, and approved. The act is therefore presumed to have been passed in conformity with the requirements of the constitution,

v.38m—10

unless the contrary be made affirmatively to appear. And the proof furnished by the journals, in matters of procedure, as the reading of bills, etc., must be clear and convincing, in order to overcome this presumption. *Miller* v. *State,* 3 Ohio St. 475; *Williams* v. *State,* 6 Lea, 549; *Supervisors* v. *People,* 25 Ill. 181; *Larrison* v. *Peoria, etc., R. Co.,* 77 Ill. 11; *Worthen* v. *Badgett,* 32 Ark. 496. We see no force in the suggestion of counsel that, from the peculiar form of the record in this instance, there is necessarily implied a fatal irregularity in the proceeding; that is to say, that the house ordered the second reading of the bill in question in disregard of the constitutional direction above referred to. On the contrary, it will be presumed, in support of the action of the legislature, that the motion for the second reading was adopted by the requisite two-thirds vote, and that the house deemed it a proper case to dispense with the rule, and to proceed with the second reading out of its regular order. The rule must therefore necessarily have been suspended, and the procedure regular. We cannot, therefore, affirm that the rules were not suspended, or assume upon this record that the members of the house disregarded a constitutional obligation. *Worthen* v. *Badgett, supra,* 516, 518.

3. The next question presented is whether it was necessary, in order to render the legislation of 1887 upon the subject operative and effectual in the city of Minneapolis, that there should be supplementary legislation by the city, in the form of ordinances or by-laws. The several acts (chapter 5, chapter 6, and chapter 81, Laws 1887,) which must be read and considered together, and in themselves contain many effective police regulations, are made specially applicable to cities, and include plenary provisions as to the terms and conditions upon which licenses to sell intoxicating liquors may be granted. The only change permitted is that the city council may increase the license fee, (chapter 5, § 1;) and doubtless, under the police power usually conferred by city charters, ordinances may be passed in aid of and supplementary to these acts, but not inconsistent therewith. But the law as framed by the legislature is complete in itself and self-executing, and, without the aid of supplementary local legislation, applications may be filed with the city clerk, and brought before,

the council for action thereon, as was done in the case at bar, in the same manner, substantially, as, in proper cases, similar applications are made to county commissioners. Chapter 81, § 4, subsec. 29. And the city council, which is the proper municipal authority to act in the premises, may consider and pass upon such cases by vote or resolution. The provisions of the statute are in themselves full and clear, and there is no room for mistake as to the intention of the legislature. The procedure for obtaining licenses is provided by chapter 81, § 4, subsec. 29, chapter 6, § 1, and chapter 5, § 1. Specific provisions are made for the application, a hearing thereon, the form and approval of the bond, and the revocation of licenses by the city council. All these matters are of course to be determined by vote of the council. The statute also requires that the licenses shall contain a description of the premises and room where liquors are licensed to be sold, and provides for the prosecution and punishment of offenders violating the different provisions. The new statute does not, in terms, expressly authorize cities to grant licenses, but, as to such cities under the provisions of whose charters licenses to sell intoxicating liquors are allowed to be granted, it is clearly implied that they may be applied for and granted upon the conditions prescribed; but the provisions in such charters as to the manner in which licenses are to be procured, whether under ordinances or otherwise, are superseded, essentially, by the provisions on the same subject contained in these statutes. Chapter 5, §§ 1, 4, 5; chapter 6, §§ 1–5; chapter 81, § 4, subsecs. 25, 26, 29. It is true that additional legislation by ordinance would be necessary to increase the statutory license fee under chapter 5, § 1, and the same would, *pro tanto,* take the place of the statutory provisions; but it would be a useless form, under this legislation, to enact an ordinance embodying the provisions of the statute as to the license fee, and the procedure upon applications for license, since these acts supplement the charters, and are to be read in connection therewith, and supersede all inconsistent provisions. As before stated, the council are to act upon applications, grant or refuse them, approve bonds, etc., under the provisions thereof. They cannot delegate their authority by ordinance, or prescribe penalties. Wherever (as is the case in most charters) the

city council have the delegated authority to grant licenses, it is not material, under these acts, what the former methods of procedure were under the charter. The statutes contain all essential provisions, and are controlling. Any city ordinances upon the subject need only relate to the details for the convenient and orderly transaction of the business, if, in the discretion of the council, such further legislation should be deemed desirable.

4. It is also further urged that under the language of chapter 5, § 1, —which requires the applicant, before the issuance of the license, to pay the license fee into the treasury of the city, "in the manner provided by its charter,"—further action by the city council, by ordinance, was necessary in respect to the issuance of licenses. This provision is to be construed in connection with others in respect to the application, and with the terms of the city charter in question, of which the court will take notice, and which are such as generally exist in such charters; and, as before intimated, the question is not whether the city council might not make further regulations upon the subject, but whether the provisions of the statute, in connection with the charter, are sufficient, without further local legislation. By the charter, (Sp. Laws 1881, c. 76, subc. 3, § 19,) the treasurer is directed to receive all moneys belonging to the city, including "license money and fines." The clerk (section 3) is to keep a record of the proceedings of the council, and perform the usual duties of clerk in such cases, and make the usual certificates and transcripts. The comptroller (section 12) is required to keep accounts with the treasurer, and to charge him with all moneys received from all sources, and shall keep such books and records as shall be convenient for the preservation of the accounts of all transactions and business of the city; "and all books, lists, and records" kept in his office, and copies thereof by him certified, shall be competent evidence of all matters shown by them, (section 14.) We see no reason for any additional provisions to enable the council to act upon applications, and cause licenses to be issued; certainly, these provisions are as complete as those in the cases where the application is made to the county commissioners, under section 3, chapter 5, section 1, chapter 6, and section 4, subsection 29, chapter 81, Laws 1887.

5. The record or list of the comptroller, showing to whom licenses were issued, the amount paid, and the location of the place licensed, was competent evidence of all matters shown thereby, under the provision of the charter above quoted, and *prima facie* evidence that the defendants were licensed to sell liquors at the place designated. The proper officers whose duty it would be to see that the direction of the council was carried out are the city clerk, comptroller, and treasurer. The mere formal issuance and authentication of the license, in pursuance of the general direction to issue the same, might be done by either the clerk or comptroller. It was entirely proper for the comptroller to do it, for the reason that he was obliged to keep a record of the receipt of the fee in each instance, which must be paid before the license issues. Laws 1887, *c.* 5, § 1.

6. The form of the judgment is objected to, on the ground that the court exceeded its jurisdiction. The statute provides that the penalty shall be a fine of not less than $30 nor more than $100, and imprisonment in the county jail, not less than 10 nor more than 30 days. The sentence was imprisonment in the county jail for 30 days, and a fine of $75 and costs, and to stand committed to the county jail until such fine and costs are paid, not exceeding 30 days in addition to the 30 days' imprisonment. The objection is that the commitment to enforce the payment of the fine is illegal; but we think the objection is not well taken. The statute provides the penalties of fine and imprisonment, both of which the court is required to enforce. The direction, included in the judgment, that the defendants shall stand committed until the fine is paid, is not a part of the penalty imposed for the offence, but is to compel obedience to the order of the court directing the payment of the fine. A reasonable exercise of this power is inherent in the court, but it is expressly granted by Gen. St. 1878, *c.* 78, § 10. The case is distinguishable from *Mims* v. *State,* 26 Minn. 494, (5 N. W. Rep. 369,) where the trial court ordered an imprisonment for an additional term in the state's prison, under Gen. St. 1878, *c.* 95, § 37.

We think the judgment was authorized, and should be affirmed.