Vinette Lincoln *vs.* Andrew C. Haugan and others.

February 27, 1891.

**Evidence—Printed Journals of Legislature—Clerical Errors and Omissions.**—The printed journals of the legislature, made up and printed in pursuance of Gen. St. 1878, c. 5, § 23, and published by the authority of the state, are competent evidence of their contents; and their effect as evidence will not be destroyed by clerical errors or omissions shown to have occurred in writing up the record to complete the written journals, also provided for by section 23.

**Constitution—Passage of Bills—Yeas and Nays—Entry in Journals —Rules of Houses.**—In cases where the constitution requires the yeas and nays to be entered upon the journal of either branch of the legislature upon the passage of a bill, such requirement is mandatory. In other cases it is sufficient if it show the state of the vote, in order that it may appear that the bill was passed by a majority vote, as required by section 13, art. 4, of the constitution. The practice is, however, subject to be regulated by the rules of either house.

**Same—Laws 1885, c. 129, held Properly Passed.**—Laws 1885, c. 129, *held* to have been passed in conformity with the requirements of the constitution, and is valid.

Action brought in the district court for Hennepin county, to restrain the defendants, the Board of Park Commissioners of Minne-

apolis, from taking lands of the plaintiff for the Minnehaha State Park, under the provisions of Laws 1885, c. 129. Trial before *Lochren,* J., who ordered judgment for defendant, which was entered, and the plaintiff appealed.

*J. M. Shaw* and *Crooker & Huffcut,* for appellant.

*C. J. Rockwood,* for respondent.

VANDERBURGH, J. The principal question in this case, and the only one requiring particular consideration, is whether Laws 1885, c. 129, was enacted in a constitutional manner by the legislature. The question is raised upon the following statement of facts, found in the record: In the printed journal of the senate it appears that on the final passage of the bill, "the roll being called, there were yeas, 26, and nays, 7, as follows: Those voting in the affirmative were [here follow the names of 26 senators;] those voting in the negative were [here follow the names of 7 senators.] So the bill passed, and its title was agreed to." But in the written journal of the senate in the office of the secretary of state, the record, evidently imperfect, reads as follows: "The roll being called, there were yeas, 26, and nays, 7, as follows: Those voting in the affirmative were," —here follow the 7 names recorded in the negative in the printed journal, and the 26 names there recorded in the affirmative are omitted altogether; that is to say, the state of the vote is correctly entered, but there is an imperfect record in the written journal of the names of the persons voting upon the passage of the bill.

It appears to be the general legislative practice in this state to take the vote on the final passage of bills by roll-call. In some of the state constitutions, the yeas and nays are required to be entered on the journal upon the passage of every bill; in others, at the request of one or more members, or a definite proportion thereof. Bouv. Law Dict. "Yeas and Nays." By the constitution of the United States the yeas and nays of the members of either house, on any question, shall, at the desire of one-fifth of those present, be entered on the journal. Such constitutional directions are clearly imperative. Cooley, Const. Lim. 171. Whether it is necessary to the validity of an act in all cases, or in any particular instance, to set out the yeas and nays in full in the journal, depends upon the nature of the constitu-

tional provisions that must govern the practice. Apart from such constitutional provisions, the ordinary method of taking a vote upon a question is by the voices, show of hands, or by a rising vote, affirmative and negative. It may also be done by roll-call. But where the object is to ascertain the names as well as the number voting on each side, with a view to have them entered on the journal, this method, when resorted to to obtain such lists of names, is denominated, "Taking the yeas and nays on a question." By section 11, art. 4, state constitution, it is required that upon the passage of bills by a two-thirds vote over the veto of the governor, "the votes of both houses shall be determined by yeas and nays, and the names of the persons voting for or against the bill shall be entered on the journal of each house." This provision is peremptory. Section 13 provides that "no law shall be passed unless voted for by a majority of all the members elected to each branch of the legislature, and the vote entered upon the journal of each house." This provision is to insure a public record of the fact that laws are constitutionally passed by a majority vote, but does not require the yeas and nays to be entered. And section 5 provides that each house shall keep a journal of its proceedings, and from time to time publish the same, "and the yeas and nays, when taken on any question, shall be entered on such journals." This clearly means that the yeas and nays must be required or called for by either house, (except in cases arising under section 11,) in order to distinguish the cases in which the yeas and nays must be called and entered from those in which the formality is not required.

When no provision is made, either by the constitution or by a statutory rule to govern the case, in respect to ordering or taking the yeas and nays, it must be regulated by the rules of each house in this state, in pursuance of section 4, art. 4, of the constitution. Wils. Parl. Law, § 2252. Accordingly we find that by rule 46 of the state senate, in force when the bill in question was passed, it is provided "that it shall be competent for any member to call for the ayes and noes, which shall be entered on the journal." The house of representatives is, however, governed by a different rule.

As it does not appear that the yeas and nays were called for or ordered on the passage of this bill, the omission to enter the names

of the members voting was not fatal, and it will not be assumed, in opposition to the validity of the act, that they were formally required or taken in this instance, in the absence of any record of that fact in the journal.

The written journal of the senate, as respects the proceedings upon the passage of this bill, is clearly defective. It is true that the statute (Gen. St. 1878, c. 5, § 23) provides that the written journal therein directed to be made and recorded "shall be considered the true and authentic journal;" but the same section also provides the manner in which the daily record shall be prepared and printed, and which is required to be read and examined and compared each day with the minutes of the record of the clerk, and is thereafter printed and made up in the bound volumes of the journal, and "full faith and credit" are to be given to the journals properly printed and certified. Section 38. In this case it was clearly shown that the written journal was not made as the statute required, but was made up and completed long after the adjournment of the session, from the printed journal, and that there was a mistake made by the scrivener in recording the names entered. The irregular and incomplete enrolment of the names is fully accounted for, and all doubt that the bill was passed by the requisite vote is removed.

Judgment affirmed.