## STATE ex rel. WILLIAM L. KOHLMAN v. JOHN WAGENER.[1]

July 16, 1915.

Nos. 19,442—(258).

**Constitution — passage of bill by legislature.**

  1. Article 4, section 20, of the Constitution of Minnesota, provides that every bill shall be read on three different days in each house, unless two-thirds of the house where the bill is pending "shall deem it expedient to dispense with this rule." This constitutional provision is mandatory and must be followed unless dispensed with as therein provided.

**Same.**

  2. "Two-thirds of the house," as used in that section, means two-thirds of the whole membership of the house.

**Same — suspension of rule.**

  3. The bill for the act here in question was read in the house of representatives the second and third times upon the same day. The question is, was the constitutional rule on that subject dispensed with by two-thirds of the house. The fact that a bill was duly enrolled, authenticated by the presiding officers of each house, signed by the Governor, and filed with the secretary of state, is not, under former decisions of this court, conclusive that it was passed in a constitutional manner, but the courts may look to the legislative journals to ascertain that fact.

[1] Reported in 153 N. W. 749.

---

Note.—The conclusiveness of enrolled will is discussed in extensive notes in 23 L.R.A. 340, 40 L.R.A.(N.S.) 1, L.R.A.1915A, 1210.

**Same — presumption of validity.**

4. The presumption in favor of a bill so authenticated, signed and filed is a strong one. Evidence to overcome the presumption must be clear and strong and must show some violation of the Constitution beyond a reasonable doubt. The presumption is not overcome by mere silence of the legislative journals. The act stands as law, unless it affirmatively appears on the face of the journal that some constitutional requirement was not followed.

**Legislative journal evidence.**

5. The printed journal of daily proceedings which the statute requires of each house of the legislature, and the permanent journal of all proceedings of the session compiled therefrom, are both made evidence by G. S. 1913, § 8414. The daily printed journal and the permanent journal are, in this case, in conflict.

**Legislative journal — presumption.**

6. The daily printed journal is silent upon the subject whether the constitutional rule was dispensed with, and, if that be taken as the authorized journal of the house, then, by invoking the presumption in favor of regularity of proceedings, the courts are obliged to presume that the rule was properly dispensed with.

**Suspension of rules — proof.**

7. The permanent journal shows an adverse vote on a combined motion to suspend this rule and also certain rules of the house made before necessity had arisen for suspension of the constitutional rule. This is not affirmative proof that the house did not dispense with the constitutional rule when the occasion arose for such action.

**Suspension of rule.**

8. No particular formality is necessary to dispense with this rule. Action of the house, the necessary effect of which was to order a third reading of the bill and to place it on its final passage, and the passage of the bill by a vote of more than two-thirds of all the members of the house, operated to dispense with the rule.

**Legislative journal.**

9. On the sixty-eighth legislative day the house approved "the journal of the sixty-seventh day as printed." This action made the daily printed journal of the sixty-seventh day the only authorized journal of that day's proceedings.

Upon the relation of William L. Kohlman the district court for Ramsey county granted its writ of *habeas corpus* directed to John Wagener, as sheriff of that county. The sheriff made return that he held relator by virtue of a commitment from the municipal court

of St. Paul for selling intoxicating liquor without first obtaining a license therefor and requiring relator to give bail for his personal appearance before the district court to answer such charge. The matter was heard before Michael, J., who discharged relator. From the order of discharge, defendant appealed. Reversed.

*Lyndon A. Smith,* Attorney General, and *Richard D. O'Brien,* County Attorney, for appellant.

*F. W. Zollman* and *Frank R. Hubachek,* for respondent.

HALLAM, J.

Petitioner was prosecuted in the St. Paul municipal court for selling intoxicating liquors without a license, on May 10, 1915, at a place outside of any city, village or borough. He justified under a license issued by the board of county commissioners of Ramsey county May 3, 1915. The state invokes chapter 147, p. 205, Laws 1915, which forbids the issuance of any license to sell intoxicating liquors except in cities, villages and boroughs. The municipal court held petitioner to the grand jury and committed him to the custody of defendant sheriff. Petitioner procured a writ of *habeas corpus* to test the legality of the commitment. The trial court discharged him and the state appealed. The case turns on the validity of chapter 147, p. 205, Laws 1915. If that statute is valid, petitioner was properly committed. It is conceded that the statute was within the power of the legislature to enact. The contention is that it was not properly enacted. It is conceded that the statute was passed by a majority of both houses of the legislature and signed by the Governor. It is claimed that it was not read before its passage in the house of representatives at the times required by the state Constitution.

1. Article 4, section 20, of the Constitution provides that "every bill shall be read on three different days in each separate house, unless, in case of urgency, two-thirds of the house where such bill is depending shall deem it expedient to dispense with this rule."

We are of the opinion that the constitutional requirement as to reading on different days is mandatory, and must be complied with unless dispensed with as therein provided. It was so held in Board of Supervisors of Ramsey County v. Heenan, 2 Minn. 281 (330).

We believe the reasons given in the Heenan case for this construction are sound, and we follow the rule of that case.

2. We are also of the opinion that "two-thirds of the house," as used in section 20, means two-thirds of the whole membership of the house, and not two-thirds of a quorum of the house. Otherwise this constitutional rule might in some cases be suspended by less than the number required to pass a bill. We cannot think that this was intended. The construction given to similar provisions in other parts of the Constitution has always been in accordance with the construction which we here adopt. State v. Gould, 31 Minn. 189, 17 N. W. 276; Palmer v. Bank of Zumbrota, 72 Minn. 266, 75 N. W. 380.

3. In the house this bill was read the first time on March 31, and the second time on April 10. These two readings were on different days and were in strict accordance with the constitutional rule. The third reading alone is in question. The bill was read the third time on April 10, that is, on the same day as the second reading. The third reading was irregular unless two-thirds of the house did, as it had power to do, "dispense with this rule." We approach consideration of this question with the fact before us that this bill was duly enrolled, authenticated by the presiding officer of each house, signed by the Governor of the state, and filed with the secretary of state, all in compliance with the Constitution of the state.

It is the rule of many courts that this is conclusive of the regular passage of the bill, and the tendency of recent judicial opinion is against the right of the courts to go back of the enrolled act to determine by extrinsic evidence whether the bill was regularly enacted into law. Sutherland, Stat. Const. p. 72; 2 Wigmore, Ev. § 1350; Atchison, T. & S. F. Ry. Co. v. State, 28 Okla. 94, 113 Pac. 921, 40 L.R.A.(N.S.) 1; State v. Chester, 39 S. C. 307, 17 S. E. 752; Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, 36 L. ed. 294, 24 Harvard Law Rev. 49. See also Webster v. City of Little Rock, 44 Ark. 536, and State v. Frank, 60 Neb. 327, 83 N. W. 74.

This court, however, in accord with the greater number of decisions, at an early date held that the courts have power to go back of the enrolled bill and look to the legislative journals to ascertain the manner in which the bill was passed, and, if it appears from the

journal that some requirement of the Constitution was violated in the manner of its passage, then to declare that the bill never became a law. Board of Supervisors of Ramsey County v. Heenan, 2 Minn. 281 (330); State v. City of Hastings, 24 Minn. 78; Burt v. Winona & St. P. R. Co. 31 Minn. 472, 18 N. W. 285, 289; State v. Peterson, 38 Minn. 143, 36 N. W. 443; Lincoln v. Haugan, 45 Minn. 451, 48 N. W. 196. See In re Drainage Dist. No. 1, 26 Idaho, 311, 143 Pac. 299, L.R.A.1915A, 1210. The authority of these decisions may have been shaken by Miesen v. Canfield, 64 Minn. 513, 67 N. W. 632, but we are not disposed at this time to overrule them.

4. This much, however, is clear, there is a presumption that an enrolled bill, duly authenticated, was passed in a constitutional manner; this presumption is very strong; the evidence to overcome this presumption must be very strong and clear. It is not too much to say that the presumption in favor of regular enactment of a law is as great as the presumption in favor of the constitutionality of the subject matter of a law, and the rule in such cases is that the law is to be upheld unless its unconstitutionality is made to appear beyond a reasonable doubt. Ogden v. Saunders, 12 Wheat. 213, 270, 6 L. ed. 606; Curryer v. Merrill, 25 Minn. 1, 4, 33 Am. Rep. 450; Lommen v. Minneapolis Gaslight Co. 65 Minn. 196, 208, 68 N. W. 53, 33 L.R.A. 437, 60 Am. St. 450. This presumption of regularity in the passage of an act is not overcome by the failure of the legislative journals to show that the constitutional requirements as to procedure were followed. The enrolled bill stands as law, unless it affirmatively appears on the face of the journal that some constitutional requirement was not followed. Mere silence of the journal will not "convict the legislature of having violated the Constitution." State v. Frank, 60 Neb. 327, 333, 83 N. W. 74, 75; State v. City of Hastings, 24 Minn. 78; State v. Peterson, 38 Minn. 143, 36 N. W. 443; In re Ellis' Estate, 55 Minn. 401, 56 N. W. 1056, 23 L.R.A. 287, 43 Am. St. 514; Miesen v. Canfield, 64 Minn. 513, 56 N. W. 1056; In re Drainage Dist. No. 1, 26 Idaho, 311, 143 Pac. 299, L.R.A.1915A, 1210; Cooley, Const. Lim. (7th ed.) p. 195.

5. The next question then is, does it affirmatively appear on the

face of the journal that the house acted without dispensing with this rule. We think it does not. Unfortunately it is with some difficulty that we are able to determine what journal the house really made. G. S. 1913, § 41, provides that:

"A journal of the daily proceedings in each house shall be printed and laid before each member at the beginning of the next day's session. After it has been publicly read and corrected a copy of such journal, kept by the secretary and chief clerk, respectively, and a transcript thereof as approved, shall be certified by such secretary or clerk to the printer, who shall print the corrected sheets for the permanent journal."

The statute thus provides for a printed daily journal, and a permanent journal complete for the whole session compiled from the daily journal. Another statute in terms makes both "the printed journals of said houses, respectively, published by authority of law," and the "journals of the senate and house of representatives kept by the respective clerks thereof as provided by law, and deposited in the office of the secretary of state" evidence thereof in all cases whatsoever. G. S. 1913, § 8414. This plainly makes both the daily printed journal and the permanent journal evidence in any court. See Lincoln v. Haugan, 45 Minn. 451, 48 N. W. 196.

The bill which resulted in the act in question was introduced in the senate as Senate File Number 719. The printed daily journal and the permanent journal of the house for April 10, the sixty-seventh legislative day, are both before us, and they are in conflict. The permanent journal shows [p. 1382]:

S. F. 719 reported by a majority of the temperance committee with the recommendation that it be amended, and that when so amended it be reported without recommendation. A minority report recommended that the bill pass without amendment.

The minority report was adopted.

"Mr. Bjornson moved the rule be suspended and that S. F. No. 719 * * * be read the second and third times and placed upon its final passage" [p. 1384].

"The question being taken on the motion to suspend the rules, and the roll being called, there were yeas 77 and nays 29" [p. 1386].

The journal then reads "so the motion prevailed," but in fact it did not receive the affirmative vote of two-thirds of the entire membership of the house and it did not prevail.

"S. F. No. 719, was read the second time."

Some amendments were offered and voted down.

"Mr. Bjornson moved the previous question. Which motion prevailed" [p. 1388].

"S. F. 719 * * * was read the third time and placed upon its final passage."

"The question being taken on the passage of the bill, and the roll being called, there were yeas 94 and nays 10."

There is much more than this in the journal, but nothing more that is important here.

The printed daily journal differs from the permanent journal in this: In the place where appears the motion to suspend the rules the language in the daily journal is as follows:

"Mr. Bjornson moved the rule be suspended, and that *H. F. 719* (an entirely different bill relating to the subject of intoxicating liquors) * * * be read the second and third times and placed upon its final passage."

This condition of the house records emphasizes the necessity of the exercise of great caution in setting aside a law passed by a majority of both houses and signed by the Governor on the evidence of legislative journals.

We are of the opinion that this law must be sustained, whichever may be the authorized journal of the house.

6. We have this situation: The printed daily journal is wholly silent as to what motions were made dispensing with the constitutional rule against a third reading of the bill on this day. If we accept this as the authorized journal of the house we are compelled, by giving force to the presumption of regularity, to sustain the law.

7. If we accept the permanent journal as the authorized journal of the house, the same result must be reached. The contention of the petitioner is that the failure of the motion that the rules be suspended and the bill "be read the second and third times and placed upon its final passage," to receive the requisite two-thirds vote

is an affirmative showing that the house did not dispense with the constitutional rule as to two readings in one day. We cannot so hold. If a vote had been taken upon the question of dispensing with the constitutional rule, and upon that question alone, and the vote had been adverse, we should consider that such a vote was an affirmative showing that the house refused to dispense with the rule, for it would not be presumed in such a case that the house took action contrary to that affirmatively shown upon the journal. But this is not the situation here. At the time the vote to suspend the rules was taken the bill had not been read a second time. There was nothing in the constitutional rule that forbade a second reading at once. A house rule did forbid a second reading of the bill until another order of business was reached. Another house rule required that after the second reading the bill go to the committee of the whole. It was the apparent purpose of the motion to suspend both these rules. A motion to suspend these rules would have presented no constitutional question. But it was desired also that the bill be read a third time after its second reading and during that day. So, in order to accomplish the double purpose of suspending the house rules as to order of business, and the constitutional rule as to time of reading of bills, the motion was put in the form above given, a form in common use in such cases. But it is quite manifest that an adverse vote upon the question of suspending the house rules prescribing order of business would not be tantamount to an adverse vote upon the question of dispensing with the constitutional rule prescribing the time for the reading of bills. A member might be of a mind to suspend either but not the other. Equally certain is it that when a motion to suspend the constitutional rule as to reading of bills is combined with a motion to suspend the house rules as to order of business, and such combined motion is made and voted on before the occasion for suspension of the constitutional rule has yet arisen, no presumption arises that members voting against such combined motion are opposed to two readings of the bill on the same day, nor is there any presumption that they did not at a proper time dispense with the constitutional rule.

8. There was affirmative action by the house of still greater force

as evidence than these presumptions. It appears to us that both the permanent and the daily journals show affirmatively a manifest purpose on the part of the house to dispense with the constitutional rule. We must not lose sight of the fact that the constitutional rule against the second and third readings of a bill on the same day is one which two-thirds of the house might dispense with at pleasure. It was not necessary to dispense with this rule in any formal manner. All that is required is that the house in some unequivocal manner manifest its purpose to dispense with the rule. A motion that the bill be read a third time on the same day as its second reading, or a motion that the bill be placed upon its final passage on the day of its second reading, would unquestionably operate as a suspension of the rule against third reading on the same day. State v. Peterson, 38 Minn. 143, 36 N. W. 443, illustrates this. In that case the question arose as to whether this same constitutional rule was suspended. The journal showed that the bill "was read the first time, and on motion of Mr. Potter the bill was read the second time." The court said: "It will be presumed, in support of the action of the legislature, that the motion for the second reading was adopted by the requisite two-thirds vote, and that the house deemed it a proper case to dispense with the rule, and to proceed with the second reading out of its regular order. The rule must therefore necessarily have been suspended and the procedure regular." See Worthen v. Badgett, 32 Ark. 496, 516. In the case at bar, after the bill had been read the second time, and after all proposed amendments had been disposed of, "Mr. Bjornson moved the previous question, which motion prevailed." The previous question was then the third reading of the bill and the passage of the bill. The effect of an affirmative vote upon this motion was to order a third reading and to bring the house to a direct vote upon the bill. The number voting upon the motion for the previous question does not appear. It is presumed the vote was sufficient for all purposes. As far as appears it may have been unanimous. The question being then taken upon the passage of the bill, there were yeas 94 and nays 10. There can be no doubt upon this record that

the house intended to dispense with the rule which would forbid a third reading of the bill or a vote upon the bill upon the sixty-seventh legislative day, and that it manifested such intent. It would be difficult to give reasons which would convince a mind unaccustomed to legal quiddities, that those who in effect voted to put this bill upon its final passage on the sixty-seventh legislative day, and who, when the bill was put upon its final passage, voted for the bill, could all the time have been withholding their consent to the indispensable third reading of the bill on that day. We are of the opinion that when the house on the sixty-seventh day, by a vote sufficient for all purposes, adopted a motion, the necessary effect of which was to order a third reading of the bill and to place the bill upon its final passage, and then passed the bill by a vote of 72 per cent of all the members of the house, it must be said that two-thirds of the membership of the house manifested a purpose to dispense with the constitutional rule forbidding the third reading of the bill on that day.

9. In view of these considerations, it is not of vital importance whether the daily printed journal or the permanent journal was the authorized journal of the house. We are of the opinion, however, that the only authorized journal of the house was the daily printed journal. On the sixty-eighth day, upon convening of the house, the reading of the journal of the preceding day was dispensed with and the journal "approved as corrected." What, if any, corrections had been made do not appear. Thereupon the speaker made an oral statement that he had been in error in ruling on the preceding day that the motion to suspend the rules had been carried, and expressed the opinion that the action of the house in passing the bill was not in accordance with the Constitution. Thereupon motion was made for the approval "of the journal of the sixty-seventh day as printed." This motion prevailed. The action of the house clearly made the daily printed journal of the proceedings of the sixty-seventh day the only authorized journal of that day's proceedings. No officer of the house, nor any other person, had thereafter any authority to change the printed journal. The speaker doubtless took this view

130 M.—28.

when he later affixed his signature to the bill and transmitted it to the Governor as a bill passed by the house.

Judgment reversed.