M. W. Shupe, Appellee, v. J. R. Thede, Appellant.

April 3, 1928.

*L. W. Powers*, for appellant.

*Ralph Maclean*, for appellee.

Morling, J.—Plaintiff's allegation is that, on or about November 4, 1925:

"The defendant herein refused to be bound further by the terms of the agreement hereinbefore mentioned, and breached and rescinded said agreement, and took possession of said property, and has kept and is now in possession thereof, and is taking the rent and profits therefrom. That, after the said contract had been breached and so rescinded by defendant, this plaintiff elected to treat said contract as rescinded, and made oral demand that defendant place him *in stalu quo*, which defendant refused to do."

The contract is dated September 23, 1920. The price was $2,750, payable $40 per month, beginning November 1, 1920,

together with interest each month on the unpaid remainder, at 6 per cent. The contract states that, when $1,000 is paid, together with all interest to date of such payment, the defendant agrees to give plaintiff a deed, "and take a first mortgage back for balance due, at 6 per cent interest." The contract does not name any other time of payment than the $40 per month, with 6 per cent interest each month. Plaintiff testifies that defendant told the scrivener:

"That the balance was to be paid and carried on a mortgage, after a thousand dollars had been paid for five years at six per cent, but nothing was said about the payments on the mortgage."

The court struck out this testimony. Possession was required to be given October 1, 1920. The contract contained the usual time-of-essence and forfeiture clause, and provided that, if defendant should elect not to declare the contract void in case of failure to make payments, plaintiff agreed to pay interest at 8 per cent per annum on all payments of principal and interest from date of maturity. It also contained an acceleration clause, that, on failure to make any payment within 30 days after due, the whole sum should become due and collectible at once, with interest at 8 per cent. Plaintiff agreed to pay taxes. Plaintiff made the monthly payments until $1,000 of principal had been paid, the last payment on principal being December 11, 1922. He also paid the interest to that time. On November 16, 1923, he paid $105 interest; December 1, 1924, the same amount; and in 1925 the same amount,—$105 being the year's interest on the balance of the principal unpaid. Plaintiff also paid taxes amounting to $402.50, and made improvements and repairs. Plaintiff testifies that he left town about October 1, 1922.

"I told Mr. Thede I was leaving town. I told him I had finished my final payment on the contract, and wanted my deed and abstract."

He testifies that:

"I asked him to make me a deed, and take a mortgage for the balance at 6 per cent, as agreed, and he said, 'We will add costs, and will have revenue stamps, to make the transfer now, and we will just let it stand as it is, and we will try and sell the place, and then we can clean up and get our money for less expense, and we can carry it that way as easy as we can on a

mortgage, and you pay the interest and taxes;' and I thought that would be all right, and that is the way the thing stood, and was left that way."

This testimony was taken over proper objection. Plaintiff, after leaving town, rented the property, and asked defendant to help him keep it rented. On November 4, 1925, defendant wrote plaintiff:

"You are hereby notified that I have cancelled the contract that you hold on the house and lots [describing them] and have rented the premises. We were over there today, and found that the house is in bad condition [describing condition]. These things being true I thought it time to call the deal off, unless you get me my money in full or pay me $40 per month and interest as the contract calls for, otherwise this notice is final."

Plaintiff thereupon made efforts to borrow the balance, of $1,750, but was unsuccessful. On November 30, 1925, defendant wrote plaintiff:

"If you have a party that wants to pay me $1,750 I will cheerfully give him a deed and abstract for same, providing it is done during December. Had to have the property insured again. [Sets out repairs needed] * * * all I want is my money and nothing more. You will note in cancellation notice sent you sometime ago."

On December 29, 1925, defendant wrote plaintiff:

"You can still buy the property located on Lot 5, Block 18, Manilla, Iowa. Have insured the property again till 1928. If you can let me know and I will make out deed and have abstract ready at the First National Bank, Manilla, Iowa. But must be taken care of in very short time, for its badly in need of repairs and should be done without fail."

With reference to his trying to raise money, plaintiff says:

"I figured this way: If a man had some money, that he could make a better bargain than he could make when he didn't have any. I did not write to Thede and tell him that the money was not due under the contract, because I did not think it necessary."

He never answered the above mentioned letters. Defendant's testimony is that, when plaintiff moved away:

"He said he would like to sell the property, and if I would let him have a couple of years, he would sell the property in the

meantime, and pay me off. He meant to let him off from pay-ing monthly installments, and after that, no payments were made on the principal for two years. During that two years, I made no demands upon Shupe for the monthly payments. I made an effort to collect at the end of three years—in 1925. * * * I rented the property in pursuance of a talk with Shupe. He told me to rent it. * * * There was some talk then about the balance due on the contract. He said, as soon as he could get the money, he was going to pay me. I asked him to pay me, and that is the response he made.''

He says, in reference to his letter of November 4th:

''I thought I had a right, under the contract, to write that letter. I was relying upon the provisions in the contract giving me the right to cancel in case of default in payment, when I wrote that letter. * * * Mr. Shupe can have this property for what is due on the contract any time. He could have had it at any time since the making of the contract. I was willing to con-vey it to him at any time since the making of the contract, if he paid the balance due on the purchase price. * * * In one of these letters I offered to discount that a little.''

Plaintiff says that he received no rent after the letter of November 4, 1925, and defendant never offered to pay him any rent.

The statutory notice of intention to declare forfeiture was not given. Nevertheless, the evidence is clear that the defend-ant, in writing to plaintiff, was not repudiating or refusing to perform the contract, but was standing upon it, and endeavor-ing to maintain his rights, as declared by it, and as he under-stood them to be. It is undisputed that he was willing to con-vey at any time, on receiving the balance due, and plaintiff knew it. He was urging plaintiff to pay. Notwithstanding the letter of November 4, 1925, defendant was then and after-wards offering to carry out the contract. There is no claim for reformation, and no issue as to any waiver in respect to giving notice of intention to forfeit. The purported notice of forfei-ture, as set out in the letters, was unavailing, as putting an end to the contract under the forfeiture clause. The property evidently was running down. It had not been constantly rented, and defendant had good reason for trying to get payment. Plaintiff's testimony as to the conversation between him and

defendant when he was leaving town does not show that the parties arrived at any definite agreement varying or modifying the terms of the contract. There was, at most, simply an indefinite understanding that the contract should stand as it was. It was permitted to stand that way for over three years. The plaintiff has wholly failed to show any right to replace the contract with a mortgage due in five years. On the evidence, he was in default at the time the letters were written. The circumstances at that time were such that plaintiff could not be peremptorily put in default for not making the monthly payments; but this is far from saying that the defendant had renounced the contract, repudiated it, or had refused to be longer bound by it. Defendant had not refused or put it out of his power to convey. On the contrary, he was offering to perform; but plaintiff was not offering to perform according to the terms of the contract, and he has shown no right to perform in any other manner than according to those terms. Defendant's error in thinking that he could terminate the contract by the letter was, under the statute requiring 30 days' notice of intention, a misinterpretation of the contract and of his rights. Plaintiff could not rescind for breach by defendant unless defendant had abandoned the contract, or his acts and conduct were such as to show that the defendant intended to be no longer bound by it. Defendant manifested no such intention. It was the plaintiff's default that was the cause of the trouble. Defendant's mere misinterpretation of the contract, in the absence of evidence of refusal to perform it according to its legal effect, is not such a breach as entitles the plaintiff to rescission. Plaintiff has not performed, or offered to perform, though in default. To permit him, on the facts of this record, to rescind on account of defendant's effort, not to repudiate, but to secure performance by plaintiff of the contract, and after all the indulgence that plaintiff has received, and compel defendant to reimburse plaintiff for all his expenditures on the property, and to take it back in its run-down condition, would be a startling instance of injustice. Plaintiff's claim to rescission cannot be sustained. *Mintle v. Sylvester*, 202 Iowa 1128; *McLain v. Smith*, 201 Iowa 89; *Stadelmann v. Boothroyd*, 130 Minn. 430 (212 N. W. 908); 6 Ruling Case Law 930; *Fay v. Oliver*, 20 Vt. 118 (49 Am. Dec. 764, 766, 767); 13 Corpus Juris 614.

1024

Verdict should have been directed in favor of defendant. Since it was not directed, new trial for insufficiency of evidence should have been granted. It is unnecessary to discuss the other questions argued.—*Reversed.*

STEVENS, C. J., and EVANS, DE GRAFF, ALBERT, KINDIG, and WAGNER, JJ., concur.