## Commonwealth ex rel. v. McClelland, Warden

*James A. Reilley* and *W. Brown Higbee*, for Commonwealth.

*Lewis M. D'Auria*, for relator.

DUMBAULD, J., July 19, 1938.—Relator was an employer of labor in Fayette County. He failed to pay the wages of his employes semi-monthly, as required by the

Act of April 24, 1913, P. L. 114. He was arrested on a warrant, issued by a duly commissioned alderman, and was found guilty. He was sentenced to pay a fine of $100 and costs. Being unable to comply with the sentence, he was committed to the county jail "until the fine and costs are paid or he is discharged by law".

The fine and costs have not been paid. By this writ of habeas corpus, he seeks discharge as a matter of right under the law.

His position is clearly stated in paragraph (a), page 1 of his brief:

"(a) : An alderman may not commit a defendant for non-payment of a fine imposed under an act which makes no provision for such imprisonment."

He thus brings before us a very interesting legal question. I cannot agree with the position so ably argued in the brief of relator heretofore referred to.

Section 2 of the act is the one which requires consideration. It provides:

"Any person, firm, or corporation that shall violate any of the provisions of this act shall be guilty of a misdemeanor, and upon conviction thereof before any alderman, magistrate, or justice of the peace of the proper county shall be sentenced to pay a fine not exceeding one hundred dollars ($100)."

This section is a statutory creation of an offense. It confers upon any alderman, magistrate, or justice of the peace of the proper county the authority to try a defendant summarily and to render judgment of acquittal or conviction. It specifically provides for a sentence. Such sentence shall be that the defendant pay a fine not exceeding $100.

No provision is contained in the statute by which to compel payment of such fine as may be imposed.

Relator contends that failure to include in the statute a procedure to compel payment withholds the usual methods of compelling payment of fines imposed as punishment for violations of law.

The logic of his argument is that the power of the alderman is exhausted when he imposes the sentence of fine. Followed to its conclusion, it would mean that no civil action under prescribed procedure could be invoked to compel payment.

Specifically, he contends that such failure positively withholds from the alderman the right to use a commitment to prison as a coercive measure to compel payment of the fine.

The argument that the legislature must have intended the act to be complete in itself and therefore to withhold from the convicting alderman the right to resort to the usual methods of coercion in compelling payment of a fine is ingenious but not convincing.

It implies that the legislature intended to deceive the wage earners of Pennsylvania by passing an unenforceable law. In plain words, it is an assertion that the legislature has said to the aldermen of the State: "You may arrest offenders against this statute; you may try them; you may convict them; you may sentence them to pay a fine not exceeding $100."

Whereupon, the offender can say to the aldermen: "Thus far, very good, but I won't pay the fine."

At which point, the offender walks out and the alderman is powerless to restrain him.

I do not find it necessary to make such a travesty of an act of assembly solemnly enacted.

I hold that the legislative authority to sentence a defendant to pay a fine carries with it the incidental power to imprison, upon failure to pay.

The question is extremely interesting and not entirely free of difficulty. It involves the authority of an alderman, as a statutory officer, to invoke a power existing under the common law. That a court of record would have the right to imprison for failure to pay a fine cannot be questioned. It would seem reasonable to conclude that, when a statute gives to a statutory officer (alderman) the right to impose a sentence of fine in the same

language that the right is conferred upon a court of record, the same incidents of compulsion in the payment of the fine would attach to the right to impose it.

In this view of the case, let us consider what we regard as applicable statutes and common law principles.

Section 183 of the Act of March 31, 1860, P. L. 382, 18 PS §3712, is in this language:

"In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect."

Relator contends that the injunction that "the directions of the said act shall be strictly pursued", leaves the alderman without further power when he has imposed the fine. He contends that the alderman may not resort to the coercive measures of the common law. He relies upon two reasons: (*a*) That the right to imprison for failure to pay a fine is not necessary for carrying the act of assembly into effect; and (*b*) an alderman, not a common-law officer, may not invoke the rights, powers, and duties prescribed by the common law.

We must therefore determine what is a reasonable construction of this act of assembly in the light of common-law principles applicable thereto.

A distinction must be noted between a fine as punishment for an offense, imprisonment as punishment for an offense, and imprisonment as a coercive measure to compel the payment of a fine. Our statute gives to the alderman the specific right to impose a fine. It gives no right to the alderman to sentence the defendant to a prison term. It gives no specific right to commit, upon failure to pay the fine. The question of imprisonment, as a part of the sentence as punishment, is not a question. It is clear that the right to imprison for failure to pay is an incident of the right to impose the sentence of fine.

The distinction has been clearly noted in the textbooks and decisions.

"Under the common-law rules, it is the practice, when a punishment inflicted is by sentence to pay a fine, to include in the judgment an order that the prisoner be committed to jail until the fine is paid. This has been the practice in England from the earliest times until a comparatively recent date at least, and it seems that it has never been successfully assailed on the ground that such judgment inflicted perpetual or indefinite imprisonment. The rule above stated has been followed very generally in this country, either from the adoption of the common-law doctrine, or under statutes in effect confirming it. . . . Committing a prisoner to jail until a fine is paid is no part of the punishment. The penalty, or the punishment adjudged, is the fine, and the custody adjudged is the mode of executing the sentence; that is, of enforcing the payment of the fine. *This is in accordance with the common law*": (Italics supplied). 8 R. C. L. 269, §282, et seq.

An interesting discussion of the status of one committed for failure to pay a fine is found in Ex parte Bryant, 12 A. S. R. 200, decided by the Supreme Court of Florida.

The chief justice says (p. 201) :

"It is contended that the sentence, in case the fine is not paid, amounts to perpetual imprisonment, and that this is in conflict with the protection allowed by the clause italicized.

"This view rests upon the assumption that in committing the prisoner to custody until he paid the fine, that was a part of the penalty imposed. But such assumption is not well founded. The penalty, or the punishment adjudged, was the fine,—the custody adjudged was the mode of executing the sentence; that is, of enforcing the payment of the fine. This is in accordance with the rule of the common law under which a sentence in larceny to pay a fine was accompanied, as in the present case, with

an order of commitment until the payment was made: Bishop's Crim. Proc., secs. 1132, 1135; *Davis v. State*, 22 Ga. 98; *Hill v. State*, 2 Yerg. 248. The commitment might be to the sheriff or generally until payment of the fine: *King v. Bethel*, 5 Mod. 21." See also annotation of this case at page 202.

The penalty for the offense of which defendant was convicted is pecuniary altogether. The court, on imposing the penalty, may enforce its payment by adjudging that the party convicted be committed until the fine and costs are paid. The imprisonment is no part of the penalty imposed but is the means and legal means of enforcing the judgment of the court. Such is the judgment in this case. The imprisonment is not ordered as a part of the penalty or punishment. It is the means of enforcing the penalty. Under a judgment of sentence that the prisoner stand committed until the fine is paid, he is entitled to his discharge as soon as the fine is paid.

A judgment committing a defendant to prison until the payment of a fine imposed is not void because it does not specify the extent of the imprisonment, when the limit thereof is fixed by statute: Jackson v. Boyd, 53 Iowa 536.

Under the statute, a person convicted of gaming may be ordered to jail forthwith upon his refusal to pay the fine assessed: Peyton v. Moseley, 3 T. B. Mon. 77, 79 (Ky).

So, under a statute regulating the sale of liquors by license, a party convicted of a violation thereof may be sentenced to pay a fine and costs, and to stand committed to jail until such sentence is performed: Harris v. Commonwealth, 23 Pick. 280 (Mass.).

Under a statute regulating weights and measures and providing for the appointment of an inspector and sealer thereof, and also providing for the enforcement by fine of the weights and measures so sealed, any one who violates the statute may be fined and the fine may be collected either by commitment to prison of the person upon whom

the fine is imposed, or by fieri facias: Huddleson v. Ruffin, 6 Ohio St. 604.

Under a statute providing that for a violation of a liquor law, the defendant may be fined $25 for each and every offense, and be imprisoned in the county jail until such fine and costs are paid, such provision is not inflicting imprisonment as punishment, as power is given to assess a fine only on conviction. The imprisonment is but a mode provided for collecting a fine. It is not essential to the power to imprison in such case that there should first have issued a fieri facias, and that an effort had been made in that way to satisfy the fine out of the goods of defendant; but he may be imprisoned at once upon refusal to pay the fine and costs: Ex parte Bollig, 31 Ill. 88.

Where, upon conviction, the prosecutor is sentenced to imprisonment to the county jail for 30 days, and to pay a fine of $75 and costs and stand committed until such fine and costs are paid, not exceeding 30 days in addition to the 30 days imprisonment, such judgment is valid, as the commitment in default of the payment of the sum named is not part of the penalty imposed for the offense, but is to compel obedience to the order of the court directing the payment of the fine: State of Minnesota v. Peterson, 38 Minn. 143.

Such a sentence is not illegal as being in conflict with constitutional prohibition against imprisonment for debt: Kennedy et al. v. People of the State of Illinois, 122 Ill. 649.

Perhaps the clearest statement of the rule and the reason for the rule is that of Blatchford, J., in Fischer v. Hayes, 6 Fed. 63, 71:

"It is suggested that section 725 [U. S. Comp. St. 1901, p. 583] provides for the punishment of a contempt by fine *or* imprisonment, and that, therefore, a commitment for non-payment of the fine is unlawful, because such commitment is imprisonment. There is, however, no commitment or imprisonment if the fine be paid. There is not commitment *and* fine. The punishment by a

fine is fully inflicted, under the terms of the order, if the fine be paid as the order directs, and in such case there can be no commitment. So, if there be a commitment for non-payment of the fine, there must be a discharge as soon as the fine is paid. The payment of the fine is the punishment. The awarding or infliction of the fine is no punishment. The commitment is an incident of the fine. It is not, in any manner, the 'imprisonment' allowed by the statute. The payment of the fine, and a commitment for not paying it, cannot co-exist. The commitment is not a separate punishment or imprisonment added to the payment of a fine. *It is in this view that it has always been held that where a statute authorizes or prescribes the infliction of a fine, as a punishment either for a contempt of court or for a defined offence, it is lawful for the court inflicting the fine to direct that the party stand committed until the fine be paid, although there be no specific affirmative grant of power in the statute to make such direction.*" (Italics supplied.)

This statement by Blatchford, J., is quoted and approved by the Supreme Court of California, in an opinion by Melvin, J., in Ex parte Karlson, 160 Cal. 378, 117 Pac. 447.

After thus quoting the language of Fischer v. Hayes, supra, he continues:

"The common law of England is the law of this state, so far as it is not repugnant to our own statutes and constitution. . . . The rule of the common law that the payment of a fine might be enforced by imprisonment until the fine is paid was the uniform practice of the common law courts in England, time out of mind, as may be seen by a perusal of the decisions of the court of kings bench. 'Directing that the prisoner shall stand committed till the fine, or till the fine and costs are paid, is not adding to the legal punishment, but simply a mode of enforcing obedience to the sentence of the law. The usual form of the common-law judgment is, that the prisoner stand committed till the fine is paid.' (Dodge v.

State, 24 N. J. Law, 466.) There is abundant authority to this effect in addition to the cases already cited."

It thus appears that the Act of 1860, sec. 183, is direct legislative authority for the imposition of imprisonment as a means of enforcing payment of a fine.

The common law of England and the common law of Pennsylvania are both in effect in our State. Misdemeanors are either by statute or at common law. In Commonwealth v. De Grange, 97 Pa. Superior Ct. 181, 185, wherein is quoted the Penal Code of 1860, sec. 178, it is stated:

". . . 'every felony, misdemeanor or offence whatever, not specially provided for by this act, may and shall be punished as heretofore.' If the offense charged was indictable under that portion of the common law of England which has been adopted in this Commonwealth it is preserved by this section described by the codifiers as 'a saving section' ".

"When a specific punishment is not prescribed it is uniformly and universally understood to be that annexed to common-law misdemeanors, viz: fine and imprisonment: 7 Smith Laws, 713": Commonwealth v. Flaherty, 25 Pa. Superior Ct. 490, 494.

We conclude that the Act of 1913, supra, provides a remedy, enjoins a duty, and directs that something be done in accord with that act of assembly. The directions of the act must be strictly pursued. The penalty inflicted by that act consists of the imposition of fine alone. The carrying of that act into effect requires that the common-law incident of imprisonment in default of fine be applied. In so doing, we remain strictly within the limits and requirements of the act of assembly quoted. Every court of record in the Commonwealth of Pennsylvania has the clear right to add the incident to the punishment.

Our question then resolves itself into the relative rights of a court of record and the statutory court over which an alderman presides.

The act defines the offense and calls it a misdemeanor. It confers upon the alderman the right to try the defendant. It provides that, in case of conviction before any alderman, magistrate, or justice of the peace, the defendant shall be sentenced to pay a fine, not exceeding $100. As to this particular misdemeanor, the statute gives to the alderman exactly the same authority that coordinate acts give to courts of record. The sentence is to be imposed by no one else than the alderman who, by the terms of the act, is authorized to dispose of the entire transaction. To say that the alderman may impose the fine and may not impose the coercive incident of the fine, namely, imprisonment, because he is not a common-law officer and may not invoke the principles of the common law, is so inconsistent as not to merit serious consideration. The use of imprisonment is. absolutely necessary for carrying this particular act of assembly into effect in any reasonable interpretation of the legislative intent.

Relator seems to recognize the applicability to the statute of the section of the criminal code above quoted. On page 8 of his brief, he says:

"The question now is, Is it necessary in order to carry the act into effect that the sentencing authority have power to commit if the fine is not paid?"

His argument to the point that the act has been fully carried into effect, when relator has been tried, convicted, and sentenced to pay a fine of $100, fails to convince. It attributes to the legislature, as we have heretofore said, an intention to do a vain and dishonest thing.

The same reason destroys the force of his argument that the Act of 1860 intended that the procedure and mechanics of the common law might be resorted to in order to carry the act into effect, but not to make it more "effective" than the legislature expressly provided. We can think of no procedure and mechanics of the common law that would possibly be necessary to carry the act into effect, as he seeks to have us construe it. His contention is that the act is completely "carried into effect"

and complied with when a defendant has been tried, convicted, and fined. All this is provided for in the statute. Nothing is needed to carry this act into effect, if the whole proceeding is ended when the alderman says to the defendant: "I find you guilty, and fine you $100", to which the defendant replies, "All right, Mr. Alderman, now proceed to collect your fine", and walks out.

It seems logical to conclude that, under a system of jurisprudence which commits to the judge of a court of record the right to apply the common-law principle of imprisonment as a coercive measure in the collection of a fine, the grant of authority to a member of the lesser judiciary to completely try a misdemeanor and impose a fine must also confer the authority to carry out that grant—the incident of imprisonment used as a coercive measure.

We, therefore, hold that an alderman may commit a defendant for nonpayment of the fine, provided for in the Act of 1913, supra.

Little need be said of relator's contention (b). The act makes no provision for costs. The matter of charging and collecting costs by the minor judiciary is entirely a matter within statutory regulation. The alderman who seeks to collect costs must be able to point to the statute authorizing the charging and collection of the costs in question. That a justice of the peace cannot impose costs upon a defendant, upon his conviction of an offense, for which a fine is provided by statute but which is silent as to costs, has been decided by courts of coördinate jurisdiction with which we agree: Commonwealth v. Barnhart, 22 Dist. R. 246; Commonwealth v. Cooper, 30 Dauph. 84.

If relator had been committed solely for the failure to pay the costs he would be entitled to his release under his writ. Had he offered to pay the fine, without the costs, his release must necessarily have been granted.

He is, however, not injured in any way by the inclusion of the costs in the amount that he is required to pay. He has a right to be released upon the payment of the

fine, and until he is in position to tender or pay the fine, and is then held for further imprisonment simply because of failure to pay the costs alone, he has no right to complain.

From all this, it follows that there is no merit in relator's contention. The writ is discharged and relator is remanded.